MAE G. PERSKY & others, executors & trustees, *vs.* ETTA HUTNER & others.

Worcester.   September 16, 1975. — October 31, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Devise and Legacy,* Taxes, Marital trust, Extrinsic evidence affecting construction.   *Trust,* Taxation, Trustee's discretion.   *Jurisdiction,* State law affecting Federal tax.

Federal courts and taxing authorities need not follow an interpretation of State law made by a lower State court.   [8]

A judge of a Probate Court rightly decided that the trustees under a trust indenture covering four-fifths of the settlor's gross estate for Federal estate tax purposes and containing pecuniary gifts to numerous people and providing for the creation of two trusts at the settlor's death, one a marital trust and the other a trust benefiting indicated charities upon the death of the income beneficiary, the settlor's wife, have no right to pay the debts, expenses, and taxes due from the settlor's estate at his death out of the funds of the charitable trust, thereby rendering the amount of the charitable gifts unascertainable and undeductible taxwise, where there was evidence that such charges far exceeded the value of the settlor's

---

probate estate and may be paid from the ample residue under the trust indenture, a result which will conform to the settlor's intent. [8-16]

BILL IN EQUITY filed in the Probate Court for the county of Worcester on March 1, 1974.

The suit was heard by *Conlin*, J., and reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Saul A. Seder & James F. Queenan, Jr. (George H. Mason* with them) for Mae G. Persky & others, executors and trustees.

*Francis X. Bellotti*, Attorney General, *& Richard C. Donovan*, Assistant Attorney General, for the Division of Public Charities, submitted a brief.

WILKINS, J. The judge below has reported for our consideration the correctness of his interpretation of the will and a trust indenture of Abraham S. Persky (Persky) on a question of State law which has a bearing on the amount of Federal estate taxes to be paid by the Persky estate. Although no person having an interest under the Persky will or trust challenges the judge's interpretation of those documents, this petition for a declaratory judgment has been reported to us because the Federal courts and taxing authorities need not follow an interpretation of State law made by a lower State court. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). See *Mazzola* v. *Myers*, 363 Mass. 625, 633-634 (1973). We express no opinion on issues which are unrelated to the apparent area of disagreement between the Persky estate and the Internal Revenue Service.[1]

The basic question appears to be whether the trustees under Persky's trust indenture had discretion to pay debts, expenses, and death taxes from a trust whose assets, after

---

[1] The judge found that the Internal Revenue Service had been notified of the petition but declined to be heard. We were advised at oral argument that the dispute between the Persky estate and the Internal Revenue Service is pending in the Tax Court.

a life interest in his wife, were given to various charities. If so, the amount of the charitable gifts was not sufficiently ascertainable at Persky's death to permit his estate to claim the present value of the remainder interests as a charitable deduction on his Federal estate tax return. See *Merchants Nat'l Bank* v. *Commissioner,* 320 U.S. 256, 261 (1943).

We agree with the judge below that the Persky trustees did not have the right to pay debts, expenses, and death taxes from the charitable trust before exhausting other available assets which were sufficient to meet all such obligations. Consequently, the funds to be placed in the charitable trust were not subject to invasion to pay debts, expenses, or taxes.

In his will, Persky gave tangible personal property to his wife and the residue of his estate to the trustees of the Abraham S. Persky Revocable Trust Indenture (trust indenture) to be added to and held as part of the trust property. In Article III of his will, Persky acknowledged that the trustees under the trust indenture were authorized to pay all debts, expenses, and Federal and State taxes "arising or owing on or as a result of" his death. He expressed hope that his executors and those trustees would cooperate to the fullest extent possible with respect to the payment of debts, expenses, and taxes. He directed that all taxes should be paid out of the general assets of his probate estate or out of the assets held under the trust indenture "as provided for thereunder." He added that no taxes should "be apportioned among the persons who receive or have received any of my property, either prior to my decease or under this Will or otherwise."

The trust indenture provided (1) for the creation of two trusts at Persky's death, (2) for the distribution of pecuniary gifts to numerous people and for charitable purposes, and (3) for a residuary trust for members of his family. Under item seventh of the trust indenture, the two trusts were created from property having a total initial value of one-half of Persky's adjusted gross estate,

reduced by the value of any other property which quali-
fied for the marital deduction. One trust, which he
called the Abraham S. Persky Marital Trust (the marital
trust), was to consist of up to $400,000. Its income was
payable to his widow during her life; $20,000 of its princi-
pal was payable to her each year; and she had a testa-
mentary general power of appointment over the trust
assets.

The other trust, which Persky called the Abraham S.
Persky Charitable Trust (charitable trust), was to consist
in amount of the balance, if any, of the property set aside
under item seventh.[2] The net income of the charitable
trust was payable to or for the benefit of Persky's widow
during her life; she was given a lifetime power to appoint
up to ten per cent of the initial value of the assets of that
trust to charitable institutions; and at her death the trust
assets were to be distributed for various charitable pur-
poses.

Item eighth of the trust indenture provided for pecuni-
ary gifts to various persons and charitable objects to be
satisfied from those assets not placed in either the marital
trust or the charitable trust. Persky stated in the intro-
duction to item eighth that the "Settlor *desires* that no
such distribution be made under this item EIGHTH unless
it reasonably appears to the Trustees hereunder that the
total assets under this [trust indenture] will be sufficient:
A. To establish the *trusts* provided for the benefit of my
wife . . . under Item SEVENTH above; B. Pay the admini-
stration expenses of the Settlor's estate; C. And pay *all*
Federal Estate Taxes and State Inheritance Taxes which
may be owing as a result of the Settlor's decease" (empha-
sis supplied). If the word "desires" in the quoted lan-
guage may be treated in this context as a direction to his

---

[2] This would be equal in amount to the balance of the maximum
marital deduction available for Federal estate tax purposes.

There was no prospect, of course, of qualifying all or any part of
the value of the assets in the charitable trust for the marital deduction.

trustees, it seems likely that Persky intended both the marital and the charitable trusts to be funded and maintained without any diminution for administration expenses or death taxes, assuming that the other trust assets were sufficient to meet those obligations.

In item eighteenth of the trust indenture, Persky authorized the trustees to pay debts and expenses and all Federal and State taxes "arising or owing on or as a result of the Settlor's decease." He provided that these items "shall be apportioned to and paid out of property other than property allocated to the [marital trust] under Item SEVENTH . . . ."[3] Persky then stated, in language which is set forth verbatim in the margin,[4] that all property in his estate which passes to his wife "either outright or as a beneficiary of a trust" shall be received by her undiminished by any debts, expenses, and taxes paid by the trustees.[5]

---

[3] If the trust indenture had made an explicit reference at this point to the charitable trust in addition to the marital trust, presumably there would be no dispute between the Persky estate and the Internal Revenue Service over the deductibility of the value of the charitable remainder in the charitable trust. The absence of any reference to the charitable trust in this portion of the trust indenture is discussed subsequently.

[4] "All property which is a part of the Settlor's estate and which passes to his wife, either outright or as a beneficiary of a trust, shall be payable to and received by her free of all such expenses, debts and taxes, and no part of such expenses, debts and taxes shall be apportioned to or paid out of said property so passing to the Settlor's wife. In making the above provision for the apportionment of expenses, debts and taxes, it is the Settlor's intention to take advantage of the Marital Deduction permitted under the Federal Estate Tax Laws. . . ."

[5] Persky's widow is an income beneficiary for life of the charitable trust. Because of that fact, one might argue (from the language quoted in n.4) that the charitable trust was not intended to be reduced by debts, expenses, and taxes. However, perhaps the language quoted in the first sentence of n.4 was designed solely to protect the marital deduction. The second sentence quoted in n.4 lends support to this latter view.

Persky had a gross estate for Federal estate tax purposes of approximately $5,300,000. More than $4,300,000 of that amount was attributed to assets owned by the trustees under the trust indenture. Of the approximately $1,000,000 of his gross estate not held by the trustees, over $740,000 was either life insurance not payable to his estate or property held jointly with his wife with a right of survivorship in her. Thus Persky's probate estate had a value of approximately $260,000, and the debts, expenses, and death taxes of Persky's estate far exceeded the value of his probate estate.

Persky's Federal estate tax return, as filed, showed that approximately $1,684,000 would be placed in the charitable trust.[6] The present value of the charitable remainder in that trust was computed to be $1,317,865.86 and was claimed as a charitable deduction on the return.

In explanation of its disallowance of the charitable deduction of $1,317,865.86, the Internal Revenue Service said that after debts, expenses, and death taxes, "there are no refunds available for ultimate distribution to charity." This explanation, set forth in a single sentence, is not comprehensible.[7] It assumes that the trustees are compelled to pay all debts, expenses, and death taxes from the assets of the charitable trust before turning to any other trust assets (and that the assets of the charitable trust will be fully dissipated in that endeavor). We see no basis for concluding that the Persky trustees must ex-

[6] This amount was one-half of the adjusted gross estate, reduced by the amount of all gifts qualifying for the marital deduction (about $887,000).

[7] The full sentence reads as follows: "No charitable deduction is allowed with respect to the provision made by the decedent to the Abraham S. Persky Charitable Trust set forth per Article Seventh of the Abraham S. Persky Revocable Trust, since upon the application of debts, expenses, Federal estate taxes, state inheritance taxes thereon, there are no funds available for ultimate distribution to charity." The antecedent of the word "thereon" is obscure or perhaps non-existent.

pend the assets of the charitable trust first in satisfying debts, expenses, and taxes. Therefore, the statement that "there *are* no funds available for ultimate distribution to charity" (emphasis supplied) seems wrong.

We assume that the Internal Revenue Service's appropriate position is that, in their discretion, the Persky trustees might have used all the assets of the charitable trust to satisfy his estate's debts, expenses, and taxes and, therefore, viewing the situation at the time of his death, as we and they must (*Ithaca Trust Co.* v. *United States,* 279 U.S. 151, 155 [1929]), there was no certainty that any assets intended for the charitable trust would be available to go to a charitable beneficiary at the death of Mrs. Persky. We turn then to a question of State law, calling for us to interpret the trust (and perhaps the will) to determine in the circumstances whether the trustees could have used all or any part of the assets of the charitable trust to pay debts, expenses, and taxes.[8]

---

[8] There is a middle ground not asserted by the Internal Revenue Service and not mentioned in the briefs. It might be argued that the trust indenture gave no direction to the trustees concerning which gifts made from the trust assets could or should be reduced to satisfy death taxes and that, although they could accept the burden (or it might be imposed because of the small size of Persky's residuary estate), the trustees had no discretion in apportioning the burden among the various gifts to be made from trust assets. In such a situation, perhaps the apportionment provisions of G. L. c. 65A, § 5, would apply to cause all the trust assets to bear the estate tax burden attributed to the trust assets equally to the extent that the trust assets had to be invaded to meet estate tax obligations. Also, it could be argued in the same vein that, if, in their discretion, the trustees determined to meet more than the estate tax share attributed to the trust assets, they could do so only by distributing the burden equally among all assets.

It might be claimed that, standing alone, the language quoted in n.4 above called explicitly for an equal apportionment of all death taxes on all assets except the marital trust.

Because we conclude that Persky's will should be interpreted to deny the right to invade the charitable trust to pay debts, expenses, and death taxes, we do not have to consider the consequence if the will had been silent on the point.

Because the trustees had authority to pay all taxes, Persky's will did not establish whether or how tax obligations would be satisfied out of his residuary estate or the assets held under the trust indenture. However, because his probate estate was very small in comparison to the value of his gross estate, clearly funds held under the trust indenture would have to be used to pay taxes. The Persky will expressed an antipathy to the apportionment of taxes to "persons who receive or have received any of my property, either prior to my decease or under this Will or otherwise." Although this language protected the gift of tangible personal property under Article I of the will and the proceeds of life insurance from any obligation to contribute to the payment of taxes (see *Thomas* v. *Fox*, 348 Mass. 152, 153-154 [1964]), it did nothing to resolve the question whether the assets of the charitable trust could be used to satisfy debts, expenses, and taxes. See *Scherff* v. *Silinski*, 346 Mass. 691, 694-695 (1964).

The trust indenture has language which suggests that the assets of the charitable trust should be free from any obligation to pay expenses and taxes. He expressed a *desire* in the introduction to item eighth of the trust indenture that the charitable and marital trusts be funded before any distribution should be made under item eighth. Sometimes the expression of a desire has been interpreted as a polite command and not just a hope. See *Trustees of First Methodist Church of Holyoke* v. *Attorney Gen.*, 359 Mass. 658, 659-660 (1971), and cases cited.[9] This particular choice of words creates uncertainty concerning Persky's intention. On the one hand, unless his desire is treated as a command, it makes no sense to refer to the establishment of the charitable and marital trusts before making distribution under item eighth. On the other

---

[9] We think that this desire that the trusts first be established implies reasonably a desire that, once funded, their assets not be dissipated to pay debts, expenses, and taxes.

hand, if Persky really cared, why did he only express a desire?

Other trust provisions compound rather than resolve the ambiguity. The expressed intention in item eighteenth to have property pass to his wife, outright or as a trust beneficiary, "free of all such expenses, debts and taxes" (see nn.4 and 5 above) suggests that the charitable trust's assets should not be used, because Persky's widow was to receive the income of that trust for life. On the other hand, the express protection of the marital trust, but not the charitable trust, also appearing in item eighteenth of the trust indenture (see n.3 above) might warrant an inference in these circumstances that the assets of the charitable trust could be used to satisfy debts, expenses, and taxes.

Our conclusion is that the trust indenture is ambiguous on the existence of a discretionary right of the trustees to use the assets of the charitable trust to pay debts, expenses, and taxes at Persky's death. The Persky fiduciaries argue that, where such an ambiguity exists, this court's opinion in *Putnam* v. *Putnam*, 366 Mass. 261 (1974), requires an interpretation which produces the least unfavorable tax result. Their reliance on the *Putnam* case in this respect is inappropriate. In the *Putnam* case only the taxing authorities would have benefited from one of two possible interpretations of the testator's will, and we expressed a disinclination to construe ambiguous language to produce a result favoring only the tax gatherer. Here, however, those who take under other provisions of the trust indenture might benefit from acceptance of the position taken by the Internal Revenue Service because the tax burden could be shifted from them to the charitable trust.

In order to resolve the ambiguity appearing in Persky's trust indenture, we may turn to extraneous evidence which serves as a guide to Persky's intention. *Putnam* v. *Putnam, supra* at 267, and cases cited. The judge found that Persky conferred frequently with his accountant

from the date he executed his will until he executed the eleventh and last codicil to his will almost four years later. At Persky's request, his accountant prepared numerous detailed worksheets showing how his estate would be distributed. Persky was concerned that his wife have an income adequate to enable her to live as she had been accustomed. Consistently the accountant's worksheets showed debts, expenses, and Federal and State taxes charged against the residue of the trust (and not against the marital or charitable trusts). Depletion of the assets of the charitable trust would reduce the income which Persky wished his wife to have. The judge found in effect that Persky intended to prohibit the use of assets of the marital trust and the charitable trust to pay debts, expenses, and taxes until all other trust assets were exhausted. The judge's general finding resolves the ambiguity in the trust indenture. The Persky trustees had no discretion to pay debts, expenses, and taxes from assets to be held in the charitable trust because there were ample other assets held under the trust indenture to which the trustees had to turn first.[10]

The judge's interpretation of the Persky will and trust indenture was correct in so far as it dealt with apparent issues in dispute between the representatives of his estate and the Internal Revenue Service. No party in interest has contested the judge's proposed form of judgment, and we express no opinion on it except as to the freedom of the assets of the charitable trust from liability for debts, expenses, and taxes in these circumstances. An appropriate judgment shall be entered.

*So ordered.*

---

[10] This case thus presents a different situation from *Boston Safe Deposit & Trust Co.* v. *Commissioner*, 345 F.2d 625 (1st Cir. 1965), where (in an interpretation of Massachusetts law which we should not be read to have endorsed by our citing of the opinion) the court held that the trustee's discretion to pay taxes from a nonmarital trust did not shift the statutory apportionment of death taxes from a marital deduction trust.