BOSTON SAFE DEPOSIT AND TRUST COMPANY, executor and trustee, *vs.* THE CHILDREN'S HOSPITAL & others.[1]

Middlesex.    April 8, 1976. — July 30, 1976.

Present: REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Taxation,* Succession tax.  *Trust,* Taxation, Marital deduction trust. *Devise and Legacy,* Taxes, Power.  *Power.  Will,* Construction.

Where the provisions of a will indicated an intent by the testator that the property of a testamentary trust be available for the marital deduction allowed by Federal estate tax law and that all questions relative to the trust should be resolved accordingly, and stated that all taxes should be paid out of the residue of the estate, the residue of the estate and not the marital trust property was required to bear the State inheritance taxes on future interests in the remainder of the marital trust property.  [720-728]

CIVIL ACTION commenced in the Probate Court for the county of Middlesex on January 27, 1975.

The case was heard by *McGovern, J.,* on a statement of agreed facts, and reported by her to the Appeals Court. The Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Irvin W. Cobb, Jr.,* for Boston Safe Deposit & Trust Company, executor and trustee.

---

[1] Also named as defendants were the other charities sharing by the will of Seward M. Paterson in the residue of his estate; the persons to whom the widow by her will appointed the remainder of the marital deduction trust established in Seward M. Paterson's will; and the Attorney General.

*Francis L. Coolidge* for American Cancer Society & others.

*Raymond H. Young,* guardian ad litem, pro se.

KAPLAN, J. The testator Seward M. Paterson died on May 31, 1971, survived by his second wife. His gross estate was in excess of $13,000,000 (as estimated for Federal estate tax purposes). His will made outright cash bequests of $2,245,000 to friends and relatives, and left all his real estate and tangible personal property and some other property, valued in all at $201,482, to his widow. Two trusts were established by the will: first, a trust, funded in the amount of $170,000 (if, as happened, the testator was survived by his wife), with a life interest to the testator's sister-in-law, and the remainder to named charities; second, a "marital deduction trust"[2] in the amount of $1,950,-000 from which the widow was to receive the income for life (the trustee being entitled to distribute principal to her if needed for her maintenance), with a power in the widow to appoint the principal by will, the principal to pass to the same charities if she should fail to appoint. The residue of the testator's estate (after "payment of debts, expenses and taxes"), valued on the testator's Federal estate tax return at more than $6,000,000, was bequeathed outright to the same charities.

On June 6, 1974, the widow, Marion Pushie Paterson, died, and by her will exercised her power of appointment by directing that the property of the marital trust be added to the residue of her property and be held in further trusts for the benefit of her sisters, and then for the children of one of her sisters, with final distribution of the

---

[2] The interest in property passing from a decedent to a surviving spouse may qualify as a deduction from the decedent's gross estate in determining the decedent's taxable estate for Federal estate tax purposes (see Int. Rev. Code of 1954, § 2056; *Northeastern Pa. Nat'l Bank & Trust Co.* v. *United States,* 387 U.S. 213, 219 [1967]) on the condition, among others, that the spouse be given a certain requisite control. See § 2056(b). The condition was satisfied here. See § 2056(b)(5). As up to 50% of the adjusted gross estate may be taken as a marital deduction (see § 2056[c]), the testator could have funded the trust with a more substantial share of his estate without adverse tax consequences.

principal to the surviving issue of those children. The youngest of the children was born in 1930.

With respect to the disposition made by the widow under her power of appointment, we have to observe the effect of the Massachusetts inheritance tax law. Under that law, as it applies to the estates of decedents dying before January 1, 1976,[3] the tax on future interests is not imposed as of the date of the decedent's death, but is rather postponed until the "right of possession accrues." G. L. c. 65, § 7; see *Angevine* v. *Commissioner of Corps. & Taxation,* 367 Mass. 826, 828-829 (1975). Thus the inheritance taxes on the remainder after the widow's life estate, i.e., the remainder appointed by her, would not be imposed until after her death.

The present litigation was prompted by a position taken by the Internal Revenue Service. On audit of Seward Paterson's Federal estate tax return, the Service issued a notice of deficiency in the amount of $203,968.34. It asserted the view that if the property of the marital trust was to bear the Massachusetts inheritance taxes to become due on the vesting of the future interests in possession, then the marital deduction must be reduced by reason of those obligations.[4] Alternatively, if the residue of the estate (which after debts, expenses, and taxes was to go to the designated charities) was to bear these inheritance taxes, then the charitable deduction claimed on the return would have to be reduced. See Int. Rev. Code of 1954, § 2055(c). The Service calculated that by either

---

[3] Massachusetts recently adopted an estate tax which is a single levy on the entire estate, with no subsequent tax on any future interests. St. 1975, c. 684, § 74. It applies to the estates of decedents dying on or after January 1, 1976. *Id.* at § 97.

[4] The Service calculated that the marital deduction would have to be reduced by $350,535.58 to reflect the inheritance taxes on the future interests. How the Service arrived at that figure is not clear. Cf. *Putnam* v. *Putnam,* 366 Mass. 261, 264-265 & n.7 (1974). It may be noted that the lessening of the marital deduction produces a decrease in the charitable deduction as well, for the increase of the estate tax obligation in respect of the marital trust diminishes the amount of the residue that passes to the charities.

route the Federal estate tax obligation was the same (and greater than that estimated on the return).

Boston Safe Deposit and Trust Company, as executor named in Seward Paterson's will (it is also named trustee), besides petitioning the United States Tax Court for redetermination of the deficiency, commenced the present action on January 27, 1975, in the Probate Court for Middlesex County, joining the interested parties and requesting instructions as to which property shall bear the inheritance taxes on future interests in the marital trust. Meanwhile the executor retains a portion of the residue of the estate as well as all the property of the marital trust. Answers were filed by a guardian ad litem representing a minor defendant (issue of a child of the widow's sister) and persons unborn and unascertained who are or may be interested in the marital trust; by the Attorney General; and by certain of the charities sharing in the residue of the estate. A statement of agreed facts describes the situation as outlined above. A judge of the Probate Court reported the case to the Appeals Court without decision and we transferred the case here on our motion (see G. L. c. 211A, § 10 [A]).

Article tenth[5] of Seward Paterson's will provides in part

---

[5] The full text of the article follows: "TENTH: I authorize and empower my executor or administrator in its discretion to execute and file, jointly with my wife or her legal representatives, such tax returns as my said executor or administrator deems advisable and to pay any or all taxes payable with respect to such joint returns. My debts, expenses of my last illness, funeral and burial, expenses of administration and income, estate, gift, inheritance, legacy, succession, transfer or like taxes which may be levied or assessed against my estate on account of any property disposed of by me herein or in my lifetime, or on account of jointly-owned property, or on account of any policies of insurance on my life, or on account of any property constituting a part of my estate or state law [*sic:* see n.6 below], and taxes payable with respect to joint tax returns filed as hereinabove authorized, and such penalties and interest as may be incurred thereon, shall be paid out of the remainder of my estate. Except to the extent that the property hereby charged therewith is insufficient for the payment thereof, as provided in article FIFTH, such taxes, penalties and interest shall not be charged to or apportioned between persons having an interest in property or income with respect to which such taxes are paid."

that "income, estate, gift, inheritance, legacy, succession, transfer or like taxes which may be levied or assessed against my estate on account of any property disposed of by me herein or in my lifetime, ... or on account of any property constituting a part of my estate or state law [*sic:* see n.6], ... shall be paid out of the remainder of my estate."[6] Technically, inheritance taxes are levied against the beneficiary rather than the estate (see *Beals* v. *Magenis*, 307 Mass. 547, 549-550 [1940]), but as the tax is paid ordinarily by the executor, administrator, or trustee (see G. L. c. 65, § 7), language such as that quoted has been held to relieve the beneficiaries of the burden of paying inheritance taxes due upon the death of the decedent. See *Ferguson* v. *Massachusetts Audubon Soc'y*, 316 Mass. 436, 448 (1944). Thus no one in the instant case disputes that article tenth is to be construed so as to impose on the residue all the taxes due at the death of the decedent including the inheritance tax due for the wife's life estate in the marital trust. And nothing in the article suggests that a different result was intended or should be reached with regard to inheritance taxes to become due on the future interests. As to the phrase "disposed of by me," it is a settled general rule of property law that the recipients of appointed property are considered to take from the donor of the power of appointment. See *Emmons* v. *Shaw*, 171 Mass. 410, 412 (1898), and cases cited; 5 American Law of Property § 23.3 (A. J. Casner ed. 1952). We have stated and applied the rule in the context of the inheritance tax. See *Angevine* v. *Commissioner of Corps. & Taxation, supra* at 828-829; *Curtis* v. *Commissioner of Corps. & Taxation,* 340 Mass. 169, 172 (1959). And the words "any property

---

[6] The quoted language is fractured as indicated. In the parallel article of the widow's will (set out in the present record), the words "on account of any property constituting a part of my estate" are followed by the words "subject to such taxes under applicable provisions of federal or state law."

The portion of the estate from which the taxes were to be paid under article tenth is more properly designated the "residue" than the "remainder," and we refer to it as the "residue" throughout.

constituting a part of my estate" lead to the same result. Article tenth is thus broad enough to resolve the present dispute.

The charities, which seek to throw the burden of the future inheritance taxes on the trust property itself, argue that the testator might not have viewed the property he was giving over to his widow with a power of appointment as property that he was disposing of. Cf. *Beals* v. *State St. Bank & Trust Co.*, 367 Mass. 318, 325-326 (1975). The will, however, was drawn by a lawyer and deals with technical matters left to the lawyer's expression. And if the phrase on which the charities focus might itself be susceptible of a narrowing interpretation, the phrase referring to "any property constituting a part of my estate" is not so malleable. Indeed, the whole of article tenth has a deliberately broad sweep that appears to evidence a design that the residue bear the taxes.

This interpretation seems strengthened by article fourth which establishes the marital deduction trust. The article states in part: "I intend that the property of this trust shall be available for the marital deduction allowed by the federal estate tax law applicable to my estate, and all questions relative to this trust shall be resolved accordingly. . . ."[7] The Internal Revenue Service in fact is claim-

---

[7] To quote more fully from article fourth: "FOURTH: If my wife, MARION P. PATERSON, shall survive me, I give the sum of One Million, Nine Hundred Fifty Thousand Dollars ($1,950,000) to my trustee hereunder. This gift may be satisfied in cash or in kind; provided, that any property allocated thereto in kind shall, to the extent that valuation is required, be valued for that purpose as of the date of its allocation and that only property qualified for the marital deduction shall be allocated thereto, excluding unless other property so qualified is insufficient, property subject to foreign death taxes and income in respect of a decedent. The trust property thus set aside shall be disposed of as follows:

" . . . .

"C. I intend that the property of this trust shall be available for the marital deduction allowed by the federal estate tax law applicable to my estate, and all questions relative to this trust shall be resolved accordingly. Therefore, the powers and discretion of the trustee with respect to the property of this trust shall not be exercised or exercisable except in a manner consistent with my intention as expressed in the preceding sentence."

ing that the marital deduction must be reduced if the marital trust property bears the future inheritance taxes; and article fourth says almost in terms that the latter "question" shall be so "resolved" as to preserve that deduction in full. This reinforces our proposition that the inheritance taxes are to be met out of the residue, even though there are oddities, possibly unforeseen by the draftsman, in that result.[8]

Other features of the will are not inconsistent. Article thirteenth provides in part that "[t]axes, expenses and other liabilities of the trusts hereunder shall be charged to the trusts to which they relate."[9] Superficially this

---

[8] In the particular situation, although the marital deduction is preserved by casting the inheritance taxes on the residue, there will be no saving of Federal estate taxes because the charitable deduction will be lessened. See Int. Rev. Code of 1954, § 2055(c); Treas. Reg. § 20.2055-3 (1958); *Connecticut Bank & Trust Co.* v. *United States,* 439 F.2d 931 (2d Cir. 1971). (Indeed, if the position of the Service is wrong and the marital deduction should be held to be fully preserved even if future interest taxes are charged to the marital trust [see n.12 below], then an interpretation of the will which imposes those future interest taxes on the residue will result in a larger Federal estate tax than a contrary interpretation imposing them on the marital trust.) Viewing the marital deduction trust as a means of benefiting the portion of the estate charged with paying Federal estate taxes — here the residue — one sees a peculiarity in reducing the residue passing to the charities by the amount of the inheritance taxes. But that is how the will speaks; and the result is to favor the appointees over the charities.

Our conclusion is in accord with our decision in *Putnam* v. *Putnam,* 366 Mass. 261 (1974). In that case the testator intended that his estate take advantage of the maximum marital deduction allowable under Federal estate tax law. He provided explicitly, however, that the taxes on future interests were to be paid from the trust property and the Internal Revenue Service took the position, as here, that the marital deduction would have to be diminished. We resolved the conflict in the terms of the will by looking to external evidence which showed that the testator's intention to receive the maximum marital deduction predominated, and thus we removed the burden of future taxes from the marital deduction trust. Here article fourth explicitly reveals a like intention of the testator. We do not reach our decision here, however, upon consideration of the Federal tax consequences.

[9] The text of article thirteenth is: "THIRTEENTH: My executor or trustee shall keep separate accounts of the trusts hereunder but may, in its discretion, administer two or more such trusts in one or more consolidated funds in which such separate trusts shall have undivided interests. Taxes, expenses and other liabilities of the trusts hereunder shall be charged to the trusts to which they relate. Before paying out

might seem to charge the inheritance taxes on future interests to the trust property. But if this rather perfunctory provision was to have that effect, it is hard to see why it would not also require imposing on the trust a share of all estate and inheritance taxes. Such a construction would render meaningless the command of article tenth. But the conflict disappears if we read the language of article thirteenth to refer only to those taxes incident to the operation of the trust, for example, property or capital gains taxes on assets held by the trust.[10] And, of course, the will must be so interpreted as to harmonize its provisions if that is possible. See *Tucci* v. *DiGregorio*, 358 Mass. 493, 495-496 (1970); *Sears* v. *Childs*, 309 Mass. 337, 344 (1941).

An argument may be advanced based on an omission from the will. The will provides for payment outright of the residue; had there been an intention that the residue bear the future taxes, one might have expected an instruction to the executor to prepare in some way for payment of those taxes. What is suggested is a provision for the retention of a reserve, though it is argued that even that might prove an inadequate expedient because the maximum ex-

---

income or principal to beneficiaries, my executor or trustee may reserve reasonable amounts thereof for accrued, contingent and other taxes, expenses and liabilities of the trusts."

[10] In paragraph (10) of article eleventh, listing the powers of the executor and trustee, we find: "to charge to income or to principal or to apportion between them any expense of making and changing investments, investment counsel's compensation, custodian's compensation, brokers' commissions, agents' compensation, attorneys' fees, repairs or improvements to real estate, depreciation charges, and income, estate, inheritance or any other taxes; and generally to determine all questions as between income and principal and to credit or charge to income or principal or to apportion between them any receipt or gain and any charge, disbursement or loss as the executor and trustee shall deem advisable in the circumstances of each case as it arises, notwithstanding any statute or rule of law for distinguishing income from principal or any determination of the courts; . . . ." This routine formulation of the power to allocate between income and principal does not touch the matter in issue here — the portion of the estate which is to bear the taxes. And we observe that article eleventh begins with the statement that the powers conferred are "subject to the restrictions of article fourth hereof," the article that establishes the marital deduction trust.

posure would be hard to estimate: the size of the corpus at the time of future imposition of taxes could not be predicted accurately.

The unworkability of an estate plan may be a factor throwing light on whether a will should be interpreted to create such a plan. See *Prescott* v. *St. Luke's Hosp.*, 280 Mass. 229, 233 (1932). But we think it is easy to exaggerate the difficulties that might arise in following the provision of article tenth that the inheritance taxes be paid from the residue.[11] The executor and trustee, being neutral on the issue before the court, makes no comment on the supposed difficulties.[12] It has paid out the bulk of the residue, retaining what it feels to be an adequate reserve, and we conceive that by making parallel investments of the trust property and reserve it could be reasonably assured that the trust property would not grow disproportionately to the reserve. Although the executor was not explicitly given power by the will to compromise taxes on the future interests (see G. L. c. 65, § 14), the liability of the residue for the taxes could be settled by agreement or otherwise. We are inclined to think that the omission of the will to deal expressly with the question, while regrettable, can be overcome. See *In re Smith*, 85 Misc. 636, 649 (Sur. Ct.), rev'd in part on other grounds, 167 App. Div. 131 (N.Y. 1914) (directing retention of reserve).

Although the reported cases are not in complete agreement (and much naturally turns on the individual facts and the particular language), there are cases in other

---

[11] *Old Colony Trust Co.* v. *Bravo,* 359 Mass. 34 (1971), comments on the difficulties (which may be acknowledged) in using a residue to meet the inheritance taxes, but the estate plan there involved was complex and to change the fiduciary's practice and impose the taxes on the residue would have required unwinding accounts extending over three and a half decades; in fact, the proper source for the inheritance taxes was not decided because the contestant had agreed to the allowance of accounts reflecting distribution of the residue and payment of the inheritance taxes from trust property.

[12] In the Tax Court the executor, to minimize the Federal estate tax, attempts to support the position that the marital deduction is not lost or diminished even if Massachusetts law should call for payment of the inheritance taxes out of the marital trust property.

jurisdictions holding that rather general clauses casting taxes on the residue, appearing in wills of donors of powers of appointment, are to be construed according to. their terms so as to burden the residue with future taxes due with respect to the appointed property. See *In re Duryea,* 277 N.Y. 310 (1938); *In re Smith, supra; In re Batroff's Estate,* 32 Pa. D. & C.2d 447, 449-450 (D.C. Montgomery County 1963). But cf. *Union & New Haven Trust Co.* v. *Sullivan,* 142 Conn. 685 (1955); *Page* v. *Wright,* 342 Ill. App. 352 (1950). See generally Annot., 69 A.L.R.3d 122, 235-240 (1976).

In the particular circumstances of the case, we hold that a judgment should enter instructing the executor that the residue is the source from which the State inheritance taxes on the future interests are to be paid.

*So ordered.*