DONALD P. BABSON & others, executors, *vs.*
SUSAN A. BABSON & others.

Suffolk. September 15, 1977. — December 28, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Jurisdiction,* State law affecting Federal tax, Declaratory relief. *Devise and Legacy,* Taxes, Marital trust. *Trust,* Taxation, Marital deduction trust.

Despite the nonadversary nature of the proceeding, it was proper for this court to render declaratory relief in an action brought by the executors of a will pursuant to G. L. c. 231A seeking a declaration of the testator's intent with respect to provisions of the will which concerned the Federal estate tax marital deduction. [98-103]

---

Considering a will as a whole, with the accomplishment of identifiable tax objectives as an aid in the interpretation of the will, this court found that the testator intended to take advantage of the maximum estate tax marital deduction, notwithstanding the fact that the testator did not use the word "maximum" in the provision establishing the marital deduction trust. [104-106]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 20, 1976.

The case was reserved and reported by *Quirico*, J.

*Allan van Gestel* (*Thomas E. Peckham* with him) for the plaintiffs.

HENNESSEY, C.J. This is an action brought under G. L. c. 231A by the executors of the will of Paul T. Babson seeking declarations of the testator's intent with respect to those provisions of his will which concern the Federal estate tax marital deduction and which affect the amount of such tax. The action is brought against: (1) all legatees and beneficiaries under the Babson will, including two remote contingent legatees or beneficiaries whose interests may be affected by the amount of the disputed tax; (2) trustees of all trusts either established by or named in the will; (3) the Attorney General of the Commonwealth; and (4) the Commissioner of the Internal Revenue Service. Although process was served on all named defendants, none has appeared.[1] At the request of the plaintiffs, the single justice reserved and reported the case to the full court.

The preliminary issue to be determined is whether the court should decide this case, in light of its nonadversary nature. On the merits, the issue is whether it was the intention of Babson, as shown by his will, to receive the benefit of the maximum possible Federal estate tax marital deduction.

---

[1] In addition, the office of the regional counsel for the Internal Revenue Service informed counsel for the plaintiffs by letter, with copies furnished to this court, (a) that, by virtue of the doctrine of sovereign immunity, the Commissioner is immune from suit in the courts of the Commonwealth and that he cannot be required to appear and answer to this action, (b) that he has not waived that immunity, and (c) that he does not intend to appear or to intervene in this action.

More particularly, this case raises the question whether or not provisions in the will direct the executors to charge inheritance taxes attributable to property in the marital deduction trust to the residue of the estate. Without such direction, the value of the marital deduction trust property would be reduced for Federal estate tax purposes by the amount of inheritance taxes attributable to it. See, e.g., Int. Rev. Code of 1954, § 2056(b)(4); *Jackson* v. *United States,* 376 U.S. 503 (1964).

We are advised that it is the position of the Internal Revenue Service (I.R.S.) that such maximum benefits were not intended because the Babson will did not contain the words "maximum estate tax marital deduction." The executors argue that, although the testator did not use these precise words, a conclusion that he intended to take advantage of the maximum deduction is compelled by the provisions of the will as a whole.

For the reasons discussed below, we conclude that it is appropriate to render declaratory relief in this case, notwithstanding the fact that no adversaries appeared before this court. Primarily, we conclude that the case presents a bona fide controversy because the issues posed to us are directly related to the nature and extent of property interests passing to Babson's wife on one hand, and to the residuary legatees and beneficiaries on the other. On the merits, we hold that articles Seventh, Twelfth, and Eighteenth of the Babson will evidence an intent to receive the maximum possible benefit of the estate tax marital deduction. In particular, article Twelfth clearly directs the executors to charge all taxes and assessments to the residue of the estate, and not to the marital deduction trust property.

We accept as true the facts stated in the complaint. Mass. R. Civ. P. 8 (d), 365 Mass. 749 (1974). The testator, Paul T. Babson, died on February 13, 1972, survived by his wife, Edith Y. Babson. His will, with one codicil, was allowed on March 9, 1972. The relevant provisions of this will are set forth in the margin.[2]

---

[2] Article Seventh provides, in pertinent part: "If my wife EDITH survives me, I bequeath to the Trustees hereinafter named in trust as herein-

On November 10, 1972, the executors of Babson's estate filed a Federal estate tax return which claimed a deduction equal to the maximum allowable marital deduction under

---

after provided such amount (if any be required) as will equal fifty percent (50%) of the value of my adjusted gross estate as defined in the Internal Revenue Code in force on the date of this will as finally determined for federal estate tax purposes, such fifty percent (50%) to be reduced by the aggregate value of all interests in property (if any) which pass or have passed from me to EDITH under any other provisions of this will or any codicil hereto or outside of this will and any such codicil, but only to the extent that such interests are included in my gross estate as defined in said Code for federal estate tax purposes and are allowed as a marital deduction in computing such tax under said Code, provided, however, that the legacy under this Article shall only be satisfied out of assets or the proceeds thereof, with respect to which such a marital deduction is allowable under said Code, exclusive of assets also subject to inheritance, succession, estate or other death taxes imposed by a country other than the United States of America, and shall abate to the extent it cannot be so satisfied. . . .

"1. The Trustees shall pay the net income of the trust at least as often as annually to my wife EDITH as long as she lives; and in their uncontrolled discretion the Trustees may at any time or times and for any reason pay any part or all of the principal of the trust to EDITH during her lifetime.

"2. Unless sooner terminated by payments of principal as hereinabove provided, the trust shall terminate upon the death of my wife EDITH, whereupon the Trustees shall distribute the remaining principal of the trust as EDITH shall appoint by her will making specific reference to this power, with the right in her discretion so to appoint to her estate or any other appointee or appointees without limitation, upon any terms, conditions, limitations and trusts, including the right to create new powers of appointment . . .."

Article Twelfth provides, in pertinent part: "2. I authorize my Executors to resist, settle, compromise and/or pay before or after they are due, any or all inheritance taxes on future or contingent interests in property passing or accruing from me which will take effect in possession or enjoyment after my death, whether or not such taxes are attributable to property passing under this will and any codicil hereto. I direct my Executors to charge any and all payments made by them pursuant to this section and the foregoing section 1 to the residue passing under section 1 of Article EIGHTH if my wife EDITH survives me, otherwise to the portion of the residue passing under subsection 2(b) of Article EIGHTH if any one or more of my son DONALD, daughter-in-law SUSAN and any issue of my son DONALD survives me, otherwise to the residue passing under section 3 of Article EIGHTH."

Article Eighteenth provides: "It is my intention that the legacy under Article SEVENTH shall qualify for the marital deduction allowed for the

Int. Rev. Code of 1954, § 2056. The Federal tax shown due on the return was paid at the time the return was filed. Final payment of all Massachusetts inheritance taxes was made on October 29, 1974. Payment of State taxes included the sum of $110,840.15, which was determined to be the amount of State inheritance taxes attributable to future interests under the marital deduction trust. The payment was charged by the executors to the residue of Babson's estate.

On November 7, 1974, an I.R.S. agent auditing the Federal estate tax return asserted a Federal estate tax deficiency of $57,415.20, plus interest, attributable to a decrease of $110,840.15 in the allowable Federal estate tax marital deduction. Presumably, the deficiency was assessed pursuant to Int. Rev. Code of 1954, § 2056(b)(4), on the ground that the amount of the marital deduction should be decreased by the amount of the inheritance tax attributable to future interests in the marital trust. The Federal tax agent claimed that the estate tax marital deduction had to be reduced, despite the fact that all inheritance taxes had been paid out of the residue of Babson's estate, and had not to any extent been paid out of the marital deduction trust property.[3]

---

purpose of the federal estate tax on my estate, and to that end notwithstanding any provisions hereof to the contrary:

"1. Any questions regarding the construction of my will shall be resolved in a manner consistent with my aforesaid intention.

"2. If my wife EDITH so directs, my Executors and the Trustees of the marital trust under Article SEVENTH shall neither hold any unproductive property, nor credit any receipts to the principal of my estate or of that trust or make any charges against the income of my estate or of that trust contrary to probate law and practice.

"3. All other powers, authorities and discretions of my Executors and the Trustees of the marital trust shall also be exercised in a manner consistent with and to effectuate may foresaid intention."

[3] Section 2056(b)(4) provides in part: "In determining . . . the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section — (A) There shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interests." This section has been construed to authorize the I.R.S. to

The plaintiffs paid the asserted Federal estate tax deficiency on December 4, 1974, and thereafter filed a refund claim in the amount of $57,415.20, plus interest. This amount represented the increased tax liability due to the partial disallowance of the marital deduction claim. The district director of the I.R.S. notified the plaintiffs on June 17, 1976, that the I.R.S. intended to disallow the refund claim. The plaintiffs filed a protest and requested a conference with the Appellate Division of the Office of the Regional Commissioner. On August 31, 1976, the appellate conferee tentatively agreed that he would recommend that the plaintiffs' refund claim be granted if the highest court of the Commonwealth were to determine that it was Babson's intention, as shown by his will, to receive the benefit of the maximum possible estate tax marital deduction.

1. We conclude that it is appropriate for us to decide the merits and render declaratory relief in this case. First, we are mindful of the fact that the amount and "availability of the marital deduction is a matter to be decided under Federal tax law, and that any determination of that issue by us would not be binding on the Federal tax authorities." *Mazzola* v. *Myers*, 363 Mass. 625, 633 (1973). See *Morgan* v. *Commissioner*, 309 U.S. 78, 80-81 (1940); *Estate of Wycoff* v. *Commissioner*, 506 F.2d 1144, 1149 (10th Cir. 1974). It is clear, however, that the controversy between the plaintiffs and the I.R.S. turns on the proper interpretation of the Babson will. See discussion, *supra*. See, e.g., *Boston Safe Deposit & Trust Co.* v. *Children's Hosp.*, 370 Mass. 719, 722-723 (1976); *Putnam* v. *Putnam*, 366 Mass. 261, 262

---

decrease the amount of marital deduction by the amount of inheritance tax attributable to future interests in the marital trust unless the testator in his will clearly shifted the burden of the tax to another source. See *Boston Safe Deposit & Trust Co.* v. *Children's Hosp.*, 370 Mass. 719, 722-723 (1976). The marital deduction may be decreased by the amount of taxes attributable to the property in that trust even where a testator has left the payment of such tax to the discretion of the executor, and even where the executor in fact satisfied the tax from another source. See *Estate of Wycoff* v. *Commissioner*, 506 F.2d 1144, 1147-1150 (10th Cir. 1974).

(1974). Thus, the plaintiffs are not seeking our determination of any Federal tax question. Rather, their questions regarding the interpretation of Babson's will, and, more particularly, their questions concerning Babson's intent with respect to the marital deduction, are "clearly . . . matter[s] of State law upon which this court may properly make declarations." *Mazzola* v. *Myers, supra* at 633. See generally *Fulton* v. *Trustees of Boston College,* 372 Mass. 350, 351-352 (1977); *Boston Safe Deposit & Trust Co.* v. *Children's Hosp., supra* at 722-723; *Persky* v. *Hutner,* 369 Mass. 7, 8 (1975); *Putnam* v. *Putnam, supra* at 262 n.2. Cf. *Commissioner* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967).

Second, declaratory relief is an appropriate vehicle by which to raise these issues of State law. General Laws c. 231A, § 1, inserted by St. 1945, c. 582, § 1, empowers this court to "make binding declarations of right, duty, status and other legal relations . . ., either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen." General Laws c. 231A, § 2, as amended by St. 1974, c. 630, § 1, extends this procedure to parties who seek "determinations of right, duty, status or other legal relations under . . . wills."

These provisions were "intended to expand, at least in the discretion of the court, prior provisions for the interpretation of written instruments." *Billings* v. *Fowler,* 361 Mass. 230, 234 (1972). As such, they are to be "liberally construed." *Id.* at 234. G. L. c. 231A, § 9. Pursuant to our liberal construction of G. L. c. 231A, we have in the past found sufficient "controversy" between parties so as to render declaratory relief even where "no direct, immediate interest of a present life beneficiary will be affected," *Billings* v. *Fowler, supra* at 233-234, and even where all parties to the proceeding urged the same result. *Persky* v. *Hutner, supra* at 8. *Putnam* v. *Putnam, supra* at 265-266.

In the instant case, an immediate controversy has arisen with respect to Babson's intent in establishing a marital deduction trust. More particularly, there is a question whether Babson expressed an intention in his will to shift

the inheritance tax burdens of his estate to the residue, or whether the tax burden must be apportioned in part to the marital trust. This controversy has "an important bearing upon prudent present action" by the executors of Babson's estate. *Billings* v. *Fowler, supra* at 233. "What the executors should now do in respect of Federal taxes is presently at issue and in doubt." *Old Colony Trust Co.* v. *Silliman,* 352 Mass. 6, 8 (1967). These circumstances alone are sufficient to warrant declaratory relief.[4]

Third, we note that all interested parties, including the I.R.S., were given notice and an opportunity to be heard. The fact that the named defendants chose not to participate should not preclude our review under G. L. c. 231A.

Finally, declaratory relief by this court will be dispositive of the State law questions presented, both for purposes of our own subsequent decisions, see *Old Colony Trust Co.* v. *Silliman, supra* at 9, and for purposes of any further Federal tax litigation concerning this issue. See *Fulton* v. *Trustees of Boston College,* 372 Mass. 350, 351-352 (1977); *Putnam* v. *Putnam, supra* at 262 n.2; *Mazzola* v. *Myers,* 363 Mass. 625, 633-634 (1973); *Commissioner* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967).[5] As such, our determination will serve to "afford relief from uncertainty and insecurity with respect to rights [and] duties" under the Babson will, in accordance with G. L. c. 231A, § 9.

---

[4] Although the executors' interest in resolving a present question with respect to the proper administration of the Babson estate is sufficient to warrant declaratory relief, we note further that a decision in this case also affects the nature of State property interests in an ongoing trust. In resolving the present controversy between the plaintiffs and the I.R.S., we also determine the nature and extent of property passing to Babson's wife, on one hand, and to the residuary beneficiaries, on the other.

[5] We are mindful of the suggestion of the Supreme Court in *Freuler* v. *Helvering,* 291 U.S. 35, 45 (1934), that the conclusiveness of a State court construction in subsequent tax litigation may depend on its being made in the course of an "adversary" proceeding. But see *Commissioner* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967). We conclude, however, that where all interested adverse parties were notified and given an opportunity to be heard, where the parties before the court seek a judicial determination of rights rather than a mere consent decree, and where the matter arose in a

2. We conclude that the Babson will should be read as expressing an intention to take full advantage of the marital deduction, notwithstanding the fact that the testator did not use the word "maximum" in the provision establishing the marital deduction trust. We base this conclusion on two principles of testamentary interpretation, namely, that (1) the testator's intent must be ascertained by considering the will as a whole, *Putnam* v. *Putnam, supra* at 267, "attributing due weight to all its language," *Mazzola* v. *Myers, supra* at 634, quoting from *Fitts* v. *Powell*, 307 Mass. 449, 454 (1940); and that (2) it is proper to consider "[t]he accomplishment of identifiable tax objectives . . . [as an] aid . . . [in] the interpretation of a will." *Putnam* v. *Putnam, supra* at 268. With these principles in mind, we consider the various provisions of the Babson will relating to the marital deduction.

First, article Seventh of Babson's will both refers to and parallels in many respects the provisions of the Internal Revenue Code which govern the marital deduction. For example, the nature of the property interest passing in trust for the benefit of Mrs. Babson is a life estate with a general testamentary power of appointment; the terms of the trust provide that the trustees must distribute income to Mrs. Babson at least annually; the power of appointment gives Mrs. Babson "the right in her discretion . . . to appoint to her estate or any other appointee or appointees without limitation, upon any terms, conditions, limitations and trusts, including the right to create new powers of appointment."

regular manner, with no suggestion of collusion or fraud, the underlying purposes of the "adversary" requirement have been met. Cf. *Commissioner* v. *Estate of Bosch, supra* at 463; *id.* at 471 (Douglas, J., dissenting); at 481 (Harlan, J., dissenting); and at 483-484 (Fortas, J., dissenting); *Blair* v. *Commissioner*, 300 U.S. 5, 10 (1937); *Freuler* v. *Helvering, supra* at 45; Stephens & Freeland, The Role of Local Law and Local Adjudications in Federal Tax Controversies, 46 Minn. L. Rev. 223, 247 (1961); Colowick, The Binding Effect of a State Court's Decision in a Subsequent Federal Income Tax Case, 12 Tax L. Rev. 213, 221-222 (1957); Oliver, The Nature of the Compulsive Effect of State Law in Federal Tax Proceedings, 41 Cal. L. Rev. 638, 664-666 (1953). But cf. Cahn, Local Law in Federal Taxation, 52 Yale L. Rev. 799, 818-819 (1943).

These provisions closely follow Int. Rev. Code of 1954, § 2056(b)(5), which sets forth the conditions under which a life estate with a power of appointment to the surviving spouse may qualify for the estate tax marital deduction.

Second, the testator ensured that the trust established in article Seventh was funded with assets equalling "fifty percent (50%) of the value of . . . [the] adjusted gross estate as defined in the Internal Revenue Code in force on the date of this will." The Internal Revenue Code of 1954, § 2056(c)(1), provides that this precise amount, "50 percent of the value of the adjusted gross estate," is the maximum amount allowable under the marital deduction provisions.

Third, article Eighteenth of Babson's will expresses an intention "that the legacy under Article SEVENTH shall qualify for the marital deduction allowed for the purpose of the federal estate tax." To that end, it directs that "[a]ny questions regarding the construction of my will shall be resolved in a manner consistent with my aforesaid intention." Further, article Twelfth of the Babson will clearly and un- ᐧ ambiguously directs the executors to charge "all estate taxes occasioned by my death, and all inheritance taxes on present . . . [and] on future or contingent interests in property passing or accruing from me . . . to the residue." This language has been found sufficient under Massachusetts law to shift the tax assessed against each specific bequest or devise in a will from those bequests or devises to the residue of the estate. See *Boston Safe Deposit & Trust Co.* v. *Children's Hosp.*, 370 Mass. 719, 721, 722-723 (1976); *Putnam* v. *Putnam*, 366 Mass. 261, 268 (1974).

Thus, on considering the will as a whole, we conclude that the Babson will expresses an intent to establish a marital deduction trust for Federal estate tax purposes. Further, and most importantly, the provision directing the executors to charge inheritance taxes attributable to the marital deduction trust property to the residue of the estate rather than to the marital trust, and the provision funding the marital trust at 50% of Babson's adjusted gross estate, the maximum allowable under the Internal Revenue Code,

clearly evidence an intent to take advantage of the maximum estate tax marital deduction.

3. Pursuant to the foregoing discussion, we conclude that the Babson will requires the executors to pay all inheritance taxes out of the residue of his estate, so as to effectuate Babson's intent to receive the maximum benefit of the estate tax marital deduction. The case is remanded to the county court for entry of judgment consistent with this opinion.

*So ordered.*

QUIRICO, J. (dissenting). This is an action brought under G. L. c. 231A by the executors of the will of Paul T. Babson against (a) all those beneficiaries or contingent beneficiaries under the will, or the guardians or trustees for such beneficiaries, who will be affected by the amount of the Federal estate tax payable by the executors, (b) the Attorney General of the Commonwealth, and (c) the Commissioner of the Internal Revenue Service (Commissioner). Although each defendant was served with process, none has filed an appearance or answer.

The plaintiffs allege in their complaint that "a present controversy exists between [them and] the Internal Revenue Service of the United States" over the amount of the Federal estate taxes, and they request a declaratory judgment on matters which may affect the amount of such taxes. The court has ordered the entry of the judgment requested by the plaintiffs.

There is no allegation of any controversy between the plaintiffs and the defendant beneficiaries. It is reasonable to assume that in the circumstances of this case the plaintiffs and these defendants have the common interest and goal of paying the lowest possible Federal estate tax.

Nor is there an allegation of any controversy between the plaintiffs and the Attorney General of the Commonwealth. The plaintiffs assert that all the Massachusetts taxes attributable to the marital deduction and to the present and future

interests passing in the estate have been paid in full from the estate's residue. The Attorney General is apparently satisfied that such is the fact and has therefore filed no answer or appearance.

The plaintiffs do expressly allege that they have a controversy with the Commissioner. However, notwithstanding the fact that he was served with process, the courts of this Commonwealth did not acquire jurisdiction over him. He has not voluntarily appeared or otherwise submitted to the jurisdiction of the Commonwealth, and he has correctly asserted that by virtue of the doctrine of sovereign immunity he is immune from suit in our courts. See *United States* v. *Sherwood*, 312 U.S. 584, 586-587 (1941). He is therefore not a party to this proceeding.

The net result is that the only "actual controversy" that exists is one between the Commissioner, on the one side, and the plaintiffs and the defendants who are beneficiaries under the Babson will, on the other. The Commissioner is thus a necessary and indispensable party to any adjudication of that controversy, but it is impossible for the courts of the Commonwealth to exercise jurisdiction over him, in his capacity as a Federal official, without his consent.

The power of the courts of this Commonwealth to render a declaratory judgment is limited by G. L. c. 231A, § 1, inserted by St. 1945, c. 582, § 1, to a "case in which an actual controversy has arisen and is specifically set forth in the pleadings." *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 645 n.8 (1974). *Povey* v. *School Comm. of Medford*, 333 Mass. 70, 71-72 (1955). Cf. *Commonwealth* v. *Massachusetts Elec. Co.*, 347 Mass. 780 (1964); *Harvey Payne, Inc.* v. *Slate Co.*, 342 Mass. 368, 370 (1961). This is not such a case. It is not enough that the complaint relates to a will (G. L. c. 231A, § 2); it must further specifically set forth an "actual controversy" between the parties in relation thereto. The same statutes certainly presuppose that the controversy to be adjudicated is one between the parties to the action. The provisions should not be read as indicating a legislative intent that a plaintiff be permitted to invoke the power of a

court to adjudicate a controversy between himself and a stranger to the action.

By entertaining an action of this type the court is rendering a judgment without the benefit of briefs and arguments which we could require if the actual adversaries to the controversy were before us as parties to the proceeding. Instead the court now has only the brief and argument of the plaintiffs. I cannot escape the impression that in this type of a case, although the plaintiffs attempt to name the beneficiaries as adversaries and, therefore, as nominal defendants, the plaintiffs and the beneficiaries are in fact engaged in a common effort against the absent Commissioner and are all in accord as to the answer which they believe the court should give. I do not question their right to join or acquiesce in an effort to advance their common interest in minimizing the Federal estate taxes in question. However, I do not agree that the courts of this Commonwealth are the proper forum in which to obtain a declaratory judgment when the only "actual controversy" that exists is between them, or some of them, and the absent Commissioner.

I recognize that there are precedents in our decisions for the granting of declaratory relief in cases involving facts substantially similar to those now before us. See, e.g., *Persky* v. *Hutner*, 369 Mass. 7 (1975). The precedents may have resulted in part from the very fact for which I would not grant relief in the present case, that is, the absence of any real adversary in the alleged controversy. I think that the court here should note the absence of such an adversary and the resulting absence of any brief or argument in opposition to the relief requested by and granted to the plaintiffs. I believe that this court should no longer entertain such cases or grant relief in such situations.