THE FIRST NATIONAL BANK OF BOSTON, executor vs.
THE FIRST NATIONAL BANK OF BOSTON, trustee, & others.

Suffolk. February 13, 1978. — April 27, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Trust*, Taxation, Marital deduction trust. *Devise and Legacy*, Marital
trust.

A testator's expression of intent to obtain the maximum marital deduction
necessarily implied an intent to preserve the deduction unreduced by
the amount of Federal estate tax and Massachusetts inheritance tax
which might otherwise be allocated to the marital trust property
[124-125]; QUIRICO, J., dissenting on the ground that the only real
adversary in the controversy, the Internal Revenue Service, was not
before the court [125-126].

CIVIL ACTION commenced in the Probate Court for the
county of Suffolk on July 12, 1976.

The case was reported to the Appeals Court by *Yasi*, J.
The Supreme Judicial Court granted a request for direct
review.

The case was submitted on a brief.

*John Henderson Linsley*, for The First National Bank of
Boston, executor.

HENNESSEY, C.J.   On July 12, 1976, the executor of the
estate of Leon W. Crockett (Crockett) commenced this ac-
tion for declaratory judgment in the Probate Court for Suf-
folk County under G. L. c. 231A. By this action, the plain-
tiff sought a determination of Crockett's intent with respect
to certain provisions of his will effecting the allowable
amount of the Federal estate tax marital deduction. The
defendants included the trustee named under the will, and
all of the named beneficiaries. Additionally, a judge of the
Probate Court appointed a guardian ad litem to represent
possible interested parties who were not presently ascer-

tained or not in being.[1] The parties submitted a statement of agreed facts, and, after a hearing, the judge reserved and reported the case for consideration by the Appeals Court. We granted direct appellate review.

The issue presented for our determination arises as follows. By the terms of Article Eighth, paragraph 1 of the will, Crockett directed his trustee "to appropriate a portion of [the] estate to form a separate trust the value of which shall be exactly the sum necessary to obtain the maximum marital deduction in determining the Federal Estate Tax on my estate . . . ."[2] The instrument is silent, however, with respect to the apportionment of the taxes and expenses among the assets passing under the will. As a result, and because no provision in the will explicitly directs to the contrary, the Internal Revenue Service (I.R.S.) has reduced the amount of the marital deduction by the amount of Federal and State taxes said to be allocable to the marital trust property.

We are asked to determine, therefore, whether, as a matter of State law, Crockett intended to take full advantage of the marital deduction, and, if so, whether allocating a pro-

---

[1] Because the resolution of the reported issue will affect the proportions in which the interested parties are entitled to share, there is no question that this is a controversy which is appropriate for us to decide. Cf. *Dana v. Gring*, 374 Mass. 109 (1977).

[2] Article Eighth provides, in pertinent part: "All the rest, residue and remainder of my property, . . . I give, bequeath and devise unto the Trustee, hereinafter named, *its successors and assigns* in TRUST, NEVERTHELESS, for the following purposes: 1. If my wife survives me I direct my said Trustee to appropriate a portion of my estate to form a separate trust the value of which shall be exactly *the sum necessary to obtain the maximum marital deduction in determining the Federal Estate Tax on my estate (whether passing under this will or otherwise) that qualifies for said deduction. This Trust shall be entitled Trust A, and my Trustee shall hold, manage, invest and reinvest the trust property as it shall deem best and proper and pay the net income thereof, in quarterly payments, to my said wife, Helen S. Crockett, so long as she shall live, and after her decease shall distribute the remainer of Trust A, both principal and accrued income, to whomever she appoints under her last will to receive the same, and in the event that she does not exercise her power of appointment, then to her estate."

portionate share of taxes and expenses to the trust property is consistent with that intent.

For the reasons discussed below, we conclude that, in Article Eighth, Crockett clearly expressed an intent to obtain the maximum allowable marital deduction. As we pointed out in *Putnam* v. *Putnam,* 366 Mass. 261, 268 (1974), this specific, articulated tax objective would be frustrated if we were also to attribute to the testator an intent to reduce the marital trust property by assigning it any obligation to contribute to taxes and expenses. We decide that Crockett's expression of intent to obtain the maximum marital deduction necessarily implies an intent to preserve the deduction unreduced by the amount of Federal estate tax and Massachusetts inheritance tax which might otherwise be allocated to the marital trust property.

We summarize the pertinent facts. On October 4, 1973, Leon W. Crockett died leaving a will and first codicil which were admitted to probate on November 20, 1973.[3] On or about July 5, 1974, and prior to our decision in *Putnam* v. *Putnam, supra,* the executor filed a Federal estate tax return which did not claim the maximum marital deduction. In this return, the executor, following then current I.R.S. practice, reduced the marital deduction by allocating a portion of Federal estate taxes and Massachusetts inheritance taxes to the marital trust property.[4]

Prior to the I.R.S. audit, and subsequent to our ruling in *Putnam,* the executor recomputed the Federal estate tax to reflect the maximum marital deduction. The I.R.S. was notified of these adjustments by letter.

By an examination report dated September 4, 1975, an I.R.S. examiner determined that the *Putnam* decision did not apply here, and advised the executor of his determination to disallow in part the marital deduction. Additionally,

---

[3] The relevant portion of the will is set forth at note 2 *supra.*

[4] The reduction was in the amount of $31,211.36, representing $5,202.02 in Federal estate taxes and $26,009.34 in Massachusetts inheritance taxes.

the examiner changed the total amount of taxes allocated to the marital trust from $31,211.36 to $29,832.41, giving no explanation for this change and no breakdown between Federal and State taxes allocated to the marital trust property. As a result of these determinations, the examiner rejected the executor's claim of a tax overassessment in the amount of $8,573, and computed an overassessment of $398.45.

The executor filed a protest to this report and requested consideration by the Appellate Division of the Office of the Regional Commissioner of Interal Revenue. We are advised that the Appellate Division decided against the executor, and determined that the case of *Putnam* v. *Putnam, supra,* is limited to its facts.

1. In *Putnam* v. *Putnam,* 366 Mass. 261 (1974), this court resolved a question of testamentary intent where various provisions in a will clearly stated a desire to take full advantage of the allowable marital deduction, while one provision directed that certain inheritance taxes be paid from the marital trust property. In addition to considering extraneous evidence to resolve the ambiguity, we stated that "[t]he accomplishment of identifiable tax objectives may be an aid to the interpretation of a will . . . [. T]o the extent it is reasonably consistent with the language of the will and applicable legal principles, effect should be given to that intention (citation omitted)." *Id.* at 268. Reading the will as a whole, we concluded in *Putnam* that the testator had expressed an intent to take full advantage of the marital deduction. Thus, notwithstanding an express provision in the will to the contrary, we decided that the executors should not charge any inheritance taxes to the marital trust property. We noted that any other result would destroy the maximum deduction and thereby frustrate the testator's intent. See *Putnam* v. *Putnam, supra.*

These principles are precisely applicable here. Crockett's intention to obtain the maximum marital deduction was specifically expressed on the face of the will. See note 2 *supra.* Additionally, the trust established under Article

Eighth was designed to qualify for the marital deduction under I.R.C. § 2056.[5]

A contrary intent is not to be found on examination of the will. Nowhere in the instrument is there language which suggests that Crockett intended that taxes or expenses of the estate were to be paid from funds set aside for the marital deduction trust. Thus, this case is even stronger than *Putnam*, where we concluded that a testator's intent to take full advantage of the marital deduction should be effectuated even where the will contained one provision which was expressly inconsistent with this objective. Here, as in *Putnam*, the intention to obtain the maximum marital deduction necessarily implies an intention to preclude the executors of the estate from charging any taxes or expenses to the marital trust property.

2. The case is remanded to the Probate Court, where a judgment should be entered declaring that no Federal estate taxes or Massachusetts inheritance taxes should be charged to the marital trust property.

*So ordered.*

QUIRICO, J. (dissenting). I dissent from the opinion of the court in this case for the same reason that I dissented in *Babson* v. *Babson*, 374 Mass. 90, 106 (1977), which involved facts substantially similar to those in the present case. Here again we have a complaint seeking relief under G. L. c. 231A and which alleges that "a present controversy exists between the United States Internal Revenue Service [which is not made party to the case] and the Petitioner," but which alleges no controversy between the plaintiff and any of the defendants. The only real controversy seems to be one with

---

[5] For example, in compliance with I.R.C. § 2056 (b)(5), income from the trust was to be paid to Crockett's wife on a quarterly basis. Additionally, Mrs. Crockett was given a general testamentary power of appointment over the accrued income and principal of the trust.

the plaintiff and the defendants on one side and the Internal Revenue Service on the other. The latter is not before the court and cannot be brought before this court without its consent, and it has not agreed to submit to the jurisdiction of this court.

The First National Bank of Boston (bank) brought this action in its capacity as executor of the will of Leon W. Crockett. The bank named as defendants in the complaint (a) itself in its capacity as trustee under each of two trusts under the will, (b) the testator's widow, "and his son and only heir-at-law," then living, and (c) four other persons who appear from the will to be two brothers, a nephew and a niece of the testator. Neither the bank in its capacity as trustee nor any of the individual defendants has appeared or filed an answer in the case. I believe that this is indicative of the absence of any actual controversy between the parties. On the other hand, if there is an actual controversy, it does not appear from the record why the bank as trustee, or a substitute trustee if the bank would otherwise be in a position of representing conflicting interests, filed no answer in the Probate Court and has filed no brief before this court.

A guardian ad litem was appointed by a judge of the Probate Court to represent "persons, not ascertained or not in being who are or may become interested in said case," and he filed a report in that court agreeing with the contention of the plaintiff in the latter's controversy with the Internal Revenue Service. He also joined the plaintiff in a statement of agreed facts which is before us, but he has submitted no brief nor otherwise participated in the proceedings before this court.

Thus, as in *Babson* v. *Babson, supra,* we are again being asked to adjudicate an alleged controversy as to which all the parties named in this proceeding have a common interest on the same side of the controversy, and the only real adversary in the controversy, the Internal Revenue Service, is not before the court. I do not believe that we should purport to adjudicate alleged controversies in such a vacuum.