ESTATE OF ARTHUR MILLIKEN, CHARLES B. MILLIKEN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 951–77.     Filed September 11, 1978.

*Robert J. McGee,* for the petitioner.
*John O. Tannenbaum,* for the respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioner's Federal estate tax of $46,572.47. After concessions, the only issue is whether, for purposes of the marital deduction under section 2056, I.R.C. 1954, the value of property in and passing into a marital deduction trust must be reduced by reason of Massachusetts State inheritance taxes on the future interests in that trust which will become payable upon the death of decedent's spouse, the life tenant of that trust.[1] The answer is in the negative if the testamentary documents here involved are to be interpreted, taking into account decisions of the highest court

---

[1] In the notice of deficiency, the Commissioner disallowed an additional portion of the claimed marital deduction because of "the resultant increase in Federal estate tax pursuant to Section 2056(b)(4)". The Commissioner has stipulated, however, that any increased Federal estate tax is payable first out of assets other than those of the marital trust, and he has further stipulated that those nonmarital assets exceeded in value, on the date of death, the estate tax paid with the return plus the deficiency determined by the Commissioner. Furthermore, the only question presented in the Commissioner's brief is whether the marital deduction must be reduced by the amount of the Massachusetts inheritance tax on future interests in the marital trust.

of Massachusetts, as requiring such future State taxes to be paid with funds outside the marital trust. All of the facts have been stipulated.

Petitioner, the Estate of Arthur Milliken, Charles B. Milliken, executor, filed its United States Estate Tax Return with the Director, Internal Revenue Service Center, Andover, Mass., on February 1, 1974.

Decedent Arthur Milliken died testate on May 1, 1973, while domiciled in the Commonwealth of Massachusetts. Charles B. Milliken was duly appointed executor by the Barnstable Probate Court, Barnstable, Mass. Decedent was survived by the following persons, the age at nearest birthday of each being shown as of the date of death:

(a) His wife, Susan B. Milliken (age 69);
(b) his son, Arthur N. Milliken (age 44) and his children:
Arthur Waldo (age 7),
Peter (age 6), and
Sally (age 5);
(c) his son, Charles B. Milliken (age 42) and his children:
Susan (age 14) and
Andrew (age 12);
(d) his son, Peter L. Milliken (age 37) and his child:
Phoebe (age 1).

All of the above survivors were still living as of May 11, 1978.

On July 31, 1972, decedent executed two interrelated documents which were designed to provide for the devolution of his property at his death:[2] one, a will; and the other, an instrument establishing a revocable inter vivos trust (the trust) in which he retained a life interest as well as a right to invade corpus. The will gave all his tangible personal property and real estate to his wife, and then provided for the residue of his probate estate, after payment of all present taxes and expenses, to be added to the corpus of the trust. The trust instrument directed the trustee, upon the decedent's death, to make certain specific payments to his surviving children, to his surviving daughters-in-law, and to certain designated, obviously charitable, reci-

---

[2]In addition, the decedent owned or had an interest in property held jointly with his wife which would pass to her upon his death.

pients. It also contained extensive provisions (hereinafter set forth) relating to the payment of death taxes, particularly if the residue of the probate estate should be insufficient therefor. The trustee was thereafter directed to divide the remaining trust principal into two separate trusts, designated as trust A (the marital trust) and trust B. In general, trust A provided for the payment of income to the donor's wife for life with a general testamentary power of appointment over the remainder, and trust B provided for various discretionary payments of income to members of his family during the life of the donor's wife to be followed by distributions of principal in a specified manner upon her death.

The estate tax return disclosed a total gross estate of $2,733,133.77, of which $153,806.51 was attributable to jointly owned property and $2,416,185.39 to the foregoing trust. The probate estate was in fact inadequate to satisfy the liabilities (including Federal estate taxes) of the petitioner as reflected on the return.

Both the will and the trust instrument contained detailed provisions with respect to taxes and in particular disclosed an acute awareness of the marital deduction as well as an intention to take advantage of it. The will contained the following provisions concerning the marital deduction and the payment of taxes:

V. SPECIAL PROVISIONS RELATING TO PROPERTY ALLOWABLE FOR MARITAL DEDUCTION

Notwithstanding anything to the contrary contained in this will, (i) the powers set forth in Article IV, including, without limiting the generality of the foregoing, those stated in paragraphs designated (a), (c), (f), (i), (j) and (k) thereof, shall be subject to such exceptions, limitations and restrictions as to property held to qualify for the marital deduction allowable under the federal estate tax laws applicable at the time of my death as are contained in all special provisions relating thereto in any article of this will or the aforesaid trust indenture or as may be necessary to conform to the requirements of the federal estate tax laws applicable at the time of my death for qualification for the marital deduction allowable under such laws; and (ii) my estate shall in all respects be administered so that the property used for such marital deduction shall qualify as such, and, to the extent that any provision in this will or rule of law relating to the administration of estate or trusts would prevent such qualification, that provision or rule of law shall not be applicable to the aforesaid property.

### VI. PAYMENT OF TAXES

My executor shall pay from the general assets of my probate estate, to the extent they are sufficient without requiring any abatement of the gifts under Articles I and II [i.e., the gifts of tangible personal property and real estate to the testator's wife], all inheritance, estate and other taxes in the nature of inheritance or estate taxes imposed by the United States or any state of the United States on property passing by this will (other than by the exercise by this will of any power of appointment), on life insurance upon my life, on property owned by me jointly or as tenant by the entirety with any other person and on property in the trust to which the residue of my estate is given under Article III [the trust], but excluding any tax imposed upon any future interest under the trust which is not payable until the interest comes into possession or enjoyment. Notwithstanding the foregoing, estate tax due the United States by reason of my death on any of the foregoing property shall be paid from the trust referred to in Article III above to the extent of the redemption value of any United States Treasury bonds owned by the trust at the time of my death which have a then market value less than par and are redeemable at par for the purpose of applying the proceeds to the payment of such tax.

The Federal estate tax return disclosed that the trust had United States Treasury bonds of the type described in the will in the face amount of $350,000, which were credited at par in partial payment of the tax.

Among the provisions in the trust instrument relating to the establishment and terms of trust A, the marital trust, were the following:

### III. ACTION TO BE TAKEN BY TRUSTEE ON THE DEATH OF THE DONOR

\*     \*     \*     \*     \*     \*     \*

2. If the donor's wife survives the donor, the trustee shall set aside as a separate trust to be dealt with on the terms hereinafter set forth relating to Trust A the following described fractional share of the principal of the trust fund remaining after the payments under paragraph 1: The numerator of the fraction shall be one half of the value of the donor's adjusted gross estate for federal estate tax purposes minus the value of all other items in the donor's gross estate which pass or have passed from the donor to the donor's wife in a form that qualifies for the federal estate tax marital deduction; and the denominator of the fraction shall be the value of such remaining principal of the trust fund. In computing such fraction, the final determinations used in fixing the federal estate tax, if any, on the donor's gross taxable estate shall control.

\* \* \* \* \* \* \*

IV. TERMS OF TRUST A

\* \* \* \* \* \* \*

3. *Special provisions relating to Trust A.*

Notwithstanding anything to the contrary contained in this instrument, (i) Trust A shall be established and administered so that it will qualify for the marital deduction allowable under federal estate tax laws applicable at the time of the donor's death, and to the extent that any provision in this instrument or any rule of law relating to the administration of estates or trusts would prevent such qualification that provision or rule of law shall not be applicable; and (ii) there shall not be allocated to Trust A any property or the proceeds of any property which will not qualify for such marital deduction, nor, except to the extent that assets are not otherwise available, shall there be allocated thereto property which constitutes income in respect of a decedent or as to which a foreign death tax credit is applicable, and (iii) except with the approval in writing of the donor's wife, the trustee shall not invest in or retain in Trust A any unproductive property.[3]

In addition, the trust instrument contained the following provisions concerning the payment of taxes:

IX. B. ADMINISTRATIVE RULES

\* \* \* \* \* \* \*

3. *Payment of taxes, debts and expenses.*

(a) Any inheritance or estate tax required by the donor's will to be charged against the residue of the donor's estate shall, to the extent that such residue is insufficient therefor, be paid by the trustee to the estate of the donor or to the taxing authorities. In addition, the trustee may pay any taxes required to be charged against the residue, or other debts of the donor's estate or expenses of its administration or legacies to the extent that the residue of the donor's estate to be added to this trust would be reduced by their payment by his executor or administrator. If at the time of the donor's death this trust owns United States Treasury bonds having a then market value less than par and which are redeemable at par for the purpose of applying the proceeds to payment of estate tax due in respect of the donor's taxable estate, the trustee shall, to the amount of the redemption value of such bonds, pay estate tax due the United States on property passing by the donor's will (other than by the

---

[3] Also, art. IX.C.6. relating to the general powers of the trustee, provided:

"Such powers, including, without limiting the generality of the foregoing, those stated in subparagraphs designated (a), (c), (f), (j), (k), (l) and (n) shall be subject to such exceptions, limitations and restrictions as to property held or to be held in Trust A as are contained in all special provisions relating thereto in this instrument or as may be necessary to conform to the requirements of the federal estate tax laws applicable at the time of the donor's death for qualification of Trust A for the marital deduction allowable under such laws. All powers and discretions given by this instrument to the trustee may (except as expressly limited) be exercised by the trustees for the time being of any trust hereunder whether or not named herein."

exercise by his will of any power of appointment), on life insurance on the donor's life, on property owned by the donor jointly or as tenant by the entirety with any other person and on property in this trust, and the bonds shall be redeemed and the proceeds applied to the payment of the tax. The principal to be divided into Trust A and Trust B (and the denominator of each fractional share by which the division is made) is the principal after payments made or provision for payments to be made pursuant to this subparagraph (a), any estate or inheritance tax (other than tax on any future interest) required by law to be made from this trust, and the payments to be made under paragraph 1 of Article III.

(b) The trustee may also pay, or reimburse any person for payment of, all or any part of any other tax payable by reason of the donor's death, and, if, and to the extent that, the residue of the donor's estate is insufficient therefor, may pay any other debts of the donor's estate or expenses of its administration or legacies, and, if any future interest under this instrument is subject to any tax by reason of the donor's death which is not payable until the interest comes into possession or enjoyment, the trustee may compromise such tax at any time. Payment of any taxes, debts or expenses, or legacies under this subparagraph (b), including any tax on any future interest, if compromised, shall be charged against Trust B, and in such manner as the trustee may deem equitable. If not compromised, payment of tax on any future interest under Trust B when made shall be made from the share to which it relates.

The fair market value, on the date of decedent's death, of the property in and passing into trust A, was $1,048,651; that of the property in and passing into trust B was $540,725, after reduction for Federal estate taxes paid at the time the estate tax return was filed. The value of the life interest of decedent's widow, in trust A, was $516,366 as of the date of decedent's death.

The parties have agreed that the Massachusetts inheritance taxes on the future interests in trust A are $88,291.65, if computed at class D rates under Mass. Ann. Laws ch. 65, sec. 1 (1971), and $52,463, if computed at class A rates under Mass. Ann. Laws ch. 65, sec. 1 (1971).[4]

Petitioner, on its estate tax return, claimed a deduction under section 2056(a) of $1,341,452.20, of which $1,056,902.69 was claimed in respect of property in and passing into the marital trust. The Commissioner, in his notice of deficiency dated

---

[4]Depending upon the familial relationship, if any, between the decedent and a noncharitable beneficiary, the Massachusetts statute established four classes of rates, A through D. Since the identities of the remaindermen of trust A—i.e., those who will take as a result of the wife's exercise of her testamentary power of appointment—will not be finally determined until her death, the amount of Massachusetts inheritance taxes in respect of such remainders cannot be precisely fixed until that time. Massachusetts has subsequently replaced its inheritance tax with an estate tax. See n. 5 *infra.*

December 7, 1976, determined that the marital deduction claimed by petitioner must be reduced by $117,943.30, of which a part, now stipulated to be $88,291.65, represented Massachusetts inheritance taxes in respect of the future interests in the marital trust, computed at class D rates under Mass. Gen. Laws Ann. ch. 65, sec. 1 (West 1969). The only matter now disputed by the parties is whether the Commissioner correctly disallowed $88,291.65 of petitioner's claimed marital deduction.

Section 2056(a), I.R.C. 1954, provides a deduction from a decedent's gross estate in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." In determining the value of the interest passing to the surviving spouse, section 2056(b)(4)(A) further provides that "there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest." See also sec. 20.2056(b)-4(c), Estate Tax Regs. Massachusetts law, as in effect in 1973,[5] imposed an inheritance tax on the property in and passing into trust A, the decedent's marital trust. Mass. Gen. Laws Ann. ch. 65. sec. 1, et seq. (West 1969). The parties are agreed that the Massachusetts tax on the value of decedent's widow's life interest in trust A does not decrease the marital deduction because it is payable from trust B. The dispute, therefore, is limited to the effect of the inheritance taxes payable in respect of the future interests in trust A. Those taxes will not become payable until the death of the widow, when the future interests become possessory, although they are subject to compromise at any time prior thereto. Mass. Gen. Laws Ann. ch. 65, secs. 7, 14 (West 1969).[6]

The question to be resolved is whether the will and the trust document require the trustee to discharge the future interest

---

[5]Massachusetts subsequently replaced its inheritance tax with an estate tax, for decedents dying after Dec. 31, 1975. See sec. 74 of ch. 684, Acts 1975, enacting a new ch. 65A of the Mass. Gen. Laws Ann., made applicable to decedents dying after Dec. 31, 1975, by sec. 97 of ch. 684, Acts 1975.

[6]Although the inheritance tax is nominally imposed on the beneficiaries under the will, the statute imposes primary liability for payment of the tax upon the trustees, if any, in office at the time the future interests become possessory (if the tax has not previously been compromised). Mass. Gen. Laws Ann. ch. 65, secs. 6, 7, 17 (West 1969).

taxes in respect of trust A and to charge them to a source other than the property in and passing into trust A.[7] This is a question of Massachusetts law, and the decisions of the highest court of Massachusetts in respect thereof are binding on us. *Commissioner v. Estate of Bosch*, 387 U.S. 456. The Supreme Judicial Court of Massachusetts has issued several opinions in recent years which bear upon the issue in this case.[8] See *First National Bank of Boston v. First National Bank*,      Mass.      (Mass. Adv. Sh. [1978] 1099), 375 N.E.2d 1185 (1978); *Babson v. Babson*, 373 Mass. (Mass. Adv. Sh. [1977] 2759), 371 N.E.2d 430 (1977); *Boston Safe Deposit & Trust Co. v. Children's Hospital*, 370 Mass. (Mass. Adv. Sh. [1976] 1944), 351 N.E.2d 848 (1976); *Persky v. Hutner*, 369 Mass. 7 (Mass. Adv. Sh. [1975] 3146), 336 N.E.2d 865 (1975); *Putnam v. Putnam*, 366 Mass. 261, 316 N.E.2d 729 (1974); *Mazzola v. Myers*, 363 Mass. 625, 296 N.E.2d 481 (1973). It is true, as the Commissioner argues, that the construction of the particular will and the specific trust document here in controversy depends upon the facts before us. But it is our task to decide what conclusions the Massachusetts court would reach in this case (*Commissioner v. Estate of Bosch*, 387 U.S. at 465), and in fulfilling that task we must be guided by that court's determinations in factually similar cases.

In *Mazzola v. Myers, supra*, the testator established a marital trust to be funded in the amount necessary to secure the maximum Federal marital deduction, and included a provision directing the trustees to administer the trust in such manner as to assure its qualification as a marital deduction trust under Federal law. The Supreme Judicial Court held that the testator's intention to secure the maximum Federal marital deduction overrode provisions in the will expressing the testator's desire to

---

[7]The parties also disagree as to whether the inheritance taxes on the future interests in trust A, even if payable from trust A, reduce the value *to the widow* of the property in and passing into trust A, and therefore reduce the allowable marital deduction in respect of trust A. Moreover, they further disagree as to whether the taxes, if treated as reducing the widow's property, should be computed at class D rates, which could be applicable, or at class A rates, which petitioner asserts will "most likely" be applicable. Since we resolve the first issue in favor of petitioner, however, we find it unnecessary to address ourselves to these additional contentions.

[8]In view of these recent opinions of the Massachusetts Supreme Judicial Court, we do not stop to consider our opinion in *Estate of Rice v. Commissioner*, 41 T.C. 344 (1963), affirmed on the substantive issue, vacated and remanded sub nomine *Boston Safe Deposit & Trust Co. v. Commissioner*, 345 F.2d 625 (1st Cir.), wherein we undertook to ascertain Massachusetts law on the basis of earlier Massachusetts cases.

preserve the family businesses in the family. The court commented, 363 Mass. at , 296 N.E.2d at 490:

We believe that, where possible, the powers and duties of fiduciaries should be interpreted to conform in appropriate respects to the requirements of the Federal tax law, when a testator expresses the intention that his estate qualify for some benefit under the Federal tax law. We would be reluctant to reach a conclusion that a testator intended to enrich the taxing authorities at the expense of members of his own family. * * * [Citations omitted.]

In *Putnam v. Putnam, supra,* the testator also established a marital trust to be funded to the extent necessary to secure the maximum Federal marital deduction. The will specifically provided: "Inheritance taxes on future interests in any trust hereunder paid after the establishment of the trust shall be paid from the principal of the trust with respect to which the tax is assessed or imposed." Nonetheless, the Supreme Judicial Court concluded, on the basis of all of the facts, that the testator's expressed intention to reap the maximum benefit of the Federal marital deduction overrode the express provision regarding payment of Massachusetts future interest inheritance taxes imposed with respect to the marital trust. The court held that such inheritance taxes were to be paid from assets other than those in the marital trust.

In *Babson v. Babson, supra,* the testator funded a marital trust with 50 percent of his adjusted gross estate, less property passing to the widow outright, but nowhere specifically stated that he intended to take maximum advantage of the Federal marital deduction. Nonetheless, the Supreme Judicial Court reached the following conclusion, 373 Mass. at (Mass. Adv. Sh. [1977] at ), 371 N.E.2d at 435:

We conclude that the Babson will should be read as expressing an intention to take full advantage of the marital deduction, notwithstanding the fact that the testator did not use the word "maximum" in the provision establishing the marital deduction trust. We base this conclusion on two principles of testamentary interpretation, namely, that (1) the testator's intent must be ascertained by considering the will as a whole * * * "attributing due weight to all its language," * * * ; and that (2) it is proper to consider "The accomplishment of identifiable tax objectives * * * [as an] aid * * * [in] the interpretation of a will."

The court held that the will prohibited payment of any inheritance taxes out of the assets of the marital trust.

Finally, in *First National Bank of Boston v. First National Bank, supra,* the testator provided for the funding of a marital

trust in the amount necessary to obtain the maximum Federal marital deduction, but made no provision for the apportionment of taxes. The Supreme Judicial Court held, Mass. at (Mass. Adv. Sh. [1978] at 1101–1102), 375 N.E.2d at 1186, that the testator's "expression of intent to obtain the maximum marital deduction necessarily implies an intent to preserve the deduction unreduced by the amount of Federal estate tax and Massachusetts inheritance tax which might otherwise be allocated to the marital trust property."

We think that these cases, decided by the highest court of Massachusetts, clearly support petitioner's interpretation of decedent's will and trust.[9] Article IV of the trust instrument establishes a marital trust in the form necessary to qualify for the Federal marital deduction, and article III.2. provides for its funding in the amount of 50 percent of decedent's adjusted gross estate, less the value of property passing to the widow outright. Although the will does not specifically state that the testator seeks the maximum Federal marital deduction, the marital trust is funded in such way as to achieve the maximum deduction. See *Babson v. Babson, supra.* Article IV.3. of the trust instrument specifically requires the trustee to establish and administer trust A in such manner as to qualify for the Federal marital deduction, and article IX.C.6. of the trust instrument (and also article V of the will) specifically limit the powers of the trustee in respect of trust A to conform them with the requirements of section 2056.

Both the will and the trust instrument make specific provision for the payment of estate and inheritance taxes. Article VI of the will requires all *present* taxes, *excluding* any tax imposed upon any future interest under the trust instrument, to be charged against the residue of the estate. Article IX.B.3. of the trust instrument, similarly, requires the payment of estate and inheritance taxes, *other than* taxes on future interests, before the allocation of principal to trust A. Thus, given the formula for funding trust A, present taxes will not reduce the amount going into trust A so long as there is enough property to pay present

---

[9]*Boston Safe Deposit & Trust Co. v. Children's Hospital,* 370 Mass. (Mass. Adv. Sh. [1976] 1944), 351 N.E.2d 848 (1976), and *Persky v. Hutner,* 369 Mass. 7 (Mass. Adv. Sh. [1975] 3146), 336 N.E.2d 865 (1975), are consistent with the four cases discussed above and with the result reached herein. The facts in those two cases, however, are not so directly related to the facts of this case.

taxes and fully fund trust A. Article IX.B.3.(b) of the trust instrument goes on to provide:

(b) The trustee may also pay, or reimburse any person for payment of, all or any part of any other tax payable by reason of the donor's death, and, if, and to the extent that, the residue of the donor's estate is insufficient therefor, may pay any other debts of the donor's estate or expenses of its administration or legacies, and, if any future interest under this instrument is subject to any tax by reason of the donor's death which is not payable until the interest comes into possession or enjoyment, the trustee may compromise such tax at any time. *Payment of any taxes, debts or expenses, or legacies under this subparagraph (b), including any tax on any future interest, if compromised, shall be charged against Trust B, and in such manner as the trustee may deem equitable.* If not compromised, payment of tax on any future interest under Trust B when made shall be made from the share to which it relates. [Emphasis supplied.]

The Commissioner makes two arguments in respect of article IX.B.3.(b). First, he argues that the language emphasized above requires the trustee to charge against trust B all inheritance taxes levied in respect of future interests in trust A *if but only if* the trustee exercises its authority to compromise such future interest taxes. We think a fair reading of this sentence requires, however, that the phrase "payment of any taxes" include payment of future interest inheritance taxes in respect of trust A, and that the phrase "including any tax on any future interest, if compromised," was inserted to make clear that compromised taxes were *not* to be treated differently from taxes which were not compromised. There is no apparent reason why the testator should desire future interest taxes to be treated differently depending on whether the trustee elects to compromise them or pay them, and we refuse to strain the language of article IX.B.3.(b) to produce that absurd result.

The Commissioner further argues that article IX.B.3.(b) does not, by its terms, *require* the trustee to pay or compromise the future interest inheritance taxes levied in respect of trust A, and that such future interest taxes will therefore be payable out of trust A assets if the trustee declines to exercise its *authority* to pay or compromise those taxes. See Mass. Gen. Laws Ann. ch. 65, secs. 1, 6, 7, 17 (West 1969). We do not agree.

In the first place, Massachusetts law imposes upon the trustee an obligation to discharge the inheritance taxes levied on the future interests in trust A. See Mass. Gen. Laws Ann. ch. 65, secs. 6, 7, 17 (West 1969). The trust instrument thus merely gives

the trustee authority to do what the law requires. And when the trustee pays or compromises the taxes, it is required by article IX.B.3.(b) of the trust instrument to charge the taxes to the assets of trust B.

Moreover, we conclude, in light of the Massachusetts cases discussed above, that under Massachusetts law this will and trust instrument require trust B to bear the inheritance taxes levied on the future interests in trust A. In this case, as in each of the cases discussed, the donor-testator established a marital trust which was intended to, and did, qualify for the marital deduction provided by section 2056. The donor-testator allocated to the marital trust enough assets to obtain the maximum marital deduction. He required his trustee to administer the marital trust in such manner as to qualify for the Federal marital deduction. He required, in clear terms, that trust B be charged with all present taxes, and with all future interest inheritance taxes as well *if* the trustee paid or compromised those taxes. At most, the trust instrument is ambiguous as to the trustee's duty to pay or compromise the inheritance taxes on the trust A future interests, a duty in any event imposed by law. But in *Putnam v. Putnam, supra,* the Massachusetts Supreme Judicial Court held that even explicit provisions requiring the trustees to charge taxes to the marital trust should be ignored where the testator expressed a clear desire to qualify for the maximum marital deduction. Moreover, in *Babson v. Babson, supra,* the court concluded that the will "requires the executors to pay all inheritance taxes out of the residue of his estate," 373 Mass. at     (Mass. Adv. Sh. [1977] at     ), 371 N.E.2d at 436, notwithstanding the fact that the language of the will merely authorized, and did not specifically require, the executors to pay or compromise the future interest inheritance taxes.[10] We have no doubt, therefore, that Massachusetts law, as expounded by its highest court, requires the trustee to discharge Massachusetts

---

[10] Article Twelfth of the Babson will provided:

2. I authorize my Executors to resist, settle, compromise and/or pay before or after they are due, any or all inheritance taxes on future or contingent interests in property passing or accruing from me which will take effect in possession or enjoyment after my death, whether or not such taxes are attributable to property passing under this will and any codicil hereto. I direct my Executors to charge any and all payments made by them pursuant to this section and the foregoing section 1 to the residue * * *

See *Babson v. Babson,* 373 Mass. at     n. 2 (Mass. Adv. Sh. [1977] at     n. 2), 371 N.E.2d at 432 n. 2.

inheritance taxes on the future interests in trust A and to charge those taxes to trust B.

It seems quite clear that the Supreme Judicial Court of Massachusetts has adopted an expansive approach in interpreting testamentary instruments where the marital deduction is involved. Although it may have stretched the meaning of language in such instruments to reach conclusions that might not ordinarily be reached in other circumstances, we must nevertheless take the law of Massachusetts as we find it applied by that court. And we are satisfied that the highest court of Massachusetts would interpret the will and trust instrument herein along the lines indicated above. In the circumstances, we have no alternative under *Bosch* but to accept such result. Since this holding disposes of this case, we need not consider the other contentions of the parties.

*Decision will be entered under Rule 155.*