ESTATE OF MERTON L. CLINE, Deceased, DONALD FRANK CLINE, JOHN WILLIAM CLINE and MARGARET (a/k/a) MARJORIE ANN DYAS, Personal Representatives, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cline v. Commissioner
Docket No. 1150-80.
United States Tax Court
T.C. Memo 1982-90; 1982 Tax Ct. Memo LEXIS 657; 43 T.C.M. (CCH) 607; T.C.M. (RIA) 82090; February 22, 1982. Thomas D. Graves, for the petitioners. Roger D. Osburn and Judy K. Hunt, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner *658 determined an estate tax deficiency of $ 20,293.33 in respect of the Estate of Merton L. Cline. The only issue remaining for decision is whether the estate (petitioner) is entitled to a marital deduction of $ 35,850 for property passing to the decedent's surviving spouse in accordance with a prenuptial agreement. All of the facts have been stipulated. Merton L. Cline (sometimes referred to as Dr. Cline) died on March 14, 1977, survived by his wife of two months, Carlene Bennett Cline. The decedent and his wife were domiciled at Sun City Center, Florida. On the date of his death, the decedent was 85 years old, and his widowed bride, Carlene, was 74 years old. She had only one lineal descendant, a son who was then 57, but Dr. Cline had five children, ranging in age from 37 to 54. Three of those children, whose names appear in the caption of this case, are the "co-personal representatives" of the estate, and who, in the order of their appearance in the caption, reside in Missouri, California, and Wisconsin, respectively. As reported in the estate tax return, Dr. Cline's gross estate was valued at $ 507,847.09 as of the date of death and at $ 499,794.44 as of the alternate *659 valuation date. Apart from the amount of the claimed marital deduction ($ 35,850), the beneficiaries of the estate (either directly or indirectly through a trust that was includible in the gross estate) were the decedent's five children. On January 11, 1977, three days prior to their marriage, Dr. Cline and his prospective bride, Carlene Bennett, entered into a "Pre-Nuptial Agreement", relevant provisions of which are as follows: 4. The party of the first part [Merton Cline] will deposit in a separate safe deposit box in a bank or savings and loan institution marketable Bonds having a value of Thirty-five Thousand Dollars ($ 35,000.00). Each of the parties shall have a key to said box and will be authorized to enter the safe deposit box. 5. The income from the bonds and the bonds themselves may be spent by either individual for a home in a retirement facility such as John Knox or Trinity Lake. If the funds are not used to purchase a retirement home, then the parties plan to live in CARLENE'S home. In the event of the death of Dr. CLINE then CARLENE shall receive the income from the bonds to be hers absolutely. The Thirty-five Thousand Dollars ($ 35,000.00) in bonds *660 may be used by her during her lifetime for care and support, including the personal right by her to consume the full amount. This is intended to qualify for the marital deduction under the Internal Revenue Code, thus she has the full power to consume the corpus. Upon the death of CARLENE the unused portion of the bonds will revert back to Dr. CLINE if he is then living or to his then living children if he is not living. At the death of Dr. Cline, the bonds referred to in the agreement were located in a safe deposit box maintained with the First Ruskin Bank of Ruskin, Florida. Carlene Cline was identified as a co-renter of the box and she possessed a key to it. Between September 1977, and the end of 1978, Carlene sold or redeemed all of the bonds and consumed the proceeds, primarily for a condominium apartment which she purchased for use as a personal residence. On the estate tax return, petitioner claimed a marital deduction under section 2056, I.R.C. 1954, in the amount of $ 35,850, which was equal to the value of the bonds for estate tax purposes. The Commissioner disallowed the deduction on the ground that Carlene's interest in the bonds was a terminable *661 interest. [1]
Section 2056(a), I.R.C. 1954, provides an estate tax deduction for interests in property passing from a decedent to his surviving spouse. If, however, the transferred interest is terminable, i.e., if some or all of the property may pass under the terms of the original dispositive instrument to a person other than the surviving spouse, no deduction is permitted unless the conditions of section 2056(b)(5) are met. [2] In general, section 2056(b)(5) requires that the spouse be entitled to all of the income from the property and that she have the power to appoint the entire interest to herself or her estate or both. [3] To satisfy the letter condition, which is the *662 only one at issue here, the applicable Treasury regulation requires further that the spouse's power of appointment be "exercisable in all events". Section 20.2056(b)-5, Estate Tax Regs. Carlene clearly had no right to appoint the bonds to her estate, and according to the Government, her right to appoint them to herself was not "exercisable in all events". This position is based upon the language in the prenuptial agreement limiting Carlene's use of the bonds to her "care and support". Petitioner contends, however, that the immediately following language in the agreement clearly expresses the decedent's intent that Carlene's lifetime power over the bonds be absolute: *663 This is intended to qualify for the marital deduction under the Internal Revenue Code, thus she has the full power to consume the corpus. According to petitioner, this statement of intent is sufficient to override the preceding "care and support" limitation, and thus qualify the property for the marital deduction. To determine Carlene's interest in the bonds, we must look to Florida law. See Helvering v. Stuart,317 U.S. 154, 162; reh. denied 317 U.S. 711 (1942); Morgan v. Commissioner,309 U.S. 78, 80 (1940). Prenuptial agreements are construed by the Florida courts under "substantially the same rules as when construing other contracts". (Citations omitted.) Northern Trust Co. v. King,149 Fla. 611, 6 So. 2d 539, 540 (1942). See also In re Estate of Rosenstein v. Sweet,326 So. 2d 239, 241 (Fla. Dist. Ct. App. 1976); In re Estate of Macarell,254 So. 2d 240, 241 (Fla. Dist. Ct. App. 1971); McMullen v. McMullen,185 So. 2d 191, 193 (Fla. Dist. Ct. App. 1966). The *664 court's objective is to effectuate the intent of the parties, and to this end words or expressions are not given a rigid interpretation but rather are considered with regard to the apparent purpose of the parties. Underwood v. Underwood,64 So. 2d 281, 288 (Fla. Sup. Ct. 1953). The Government's position is that the "care and support" language, as well as the provision for "reversion" of any unused bonds to Dr. Cline or his children, reveals an intent to limit Carlene's rights in the property. Petitioner apparently does not dispute the conclusion that no deduction would be allowed if this were the sole operative language. See Piatt v. Gray,321 F. 2d 79, 85 (6th Cir. 1963). Instead, petitioner asserts that the determinative provisions are those which speak of "the full power to consume the corpus" and, more important, the intention to qualify the property for the marital deduction. We think it is evident, from the wording of the prenuptial agreement, that the overriding purpose of the parties was to create an interest in the bonds for Carlene which would qualify for the marital deduction. Applying the rules of construction outlined in Underwood v. Underwood,supra,64 So. 2d at 288, *665 we therefore give effect to the language consistent with that purpose, i.e., that she have the full power to consume the property, rather than the apparently inconsistent "care and support" language. Thus, Carlene's power to consume the bonds was "exercisable in all events", and petitioner is entitled to a marital deduction for the full amount of the bonds. See Estate of James S. Todd, Jr. v. Commissioner,57 T.C. 288, 293-294 (1971); cf. Estate of Mittleman v. Commissioner,522 F. 2d 132, 140 (D.C. Cir. 1975), revg. a Memorandum Opinion of this Court; Guiney v. United States,425 F. 2d 145 (4th Cir. 1970). The Government relies on Commissioner v. Procter,142 F. 2d 824 (4th Cir. 1944), cert. denied 323 U.S. 756 (1944), for the proposition that the statement "[t]his is intended to qualify for the marital deduction" must be considered void and of no effect. We find this argument unpersuasive. Procter involved a trust indenture which purported to revoke any portion of the transfer in trust in the event that such portion was determined by a court to be subject to gift tax. The Procter *666 court held that the revocation provision was a condition subsequent and void "because contrary to public policy". 142 F. 2d at 827. In the present case, the parties made no attempt to condition the effectiveness of the transfer of the bonds upon our determination of whether the property interest given to Carlene qualifies for the marital deduction. The applicable language simply expresses the parties' desire to quality the transfer for the marital deduction. Carlene's interest in the bonds cannot be altered by our resolution of the marital deduction issue; thus, the language in question does not impose a condition subsequent on the transfer as did the objectionable provision in Procter.
The basic issue before us is the nature, under applicable state law, of property rights created by the agreement, rather than, as was the case in Procter, the effect for Federal tax purposes of a savings clause that would undertake to change the property interests otherwise created. What we have here is at best ambiguous, and possibly even conflicting, language in a poorly drafted prenuptial agreement. The Government's position -- that the wife's use of the property is limited *667 by the "care and support" language -- is certainly not frivolous. On the other hand, the agreement does provide that "she has the full power to consume the corpus", and this provision is set forth in conjunction with the statement: "This is intended to qualify for the marital deduction". But the latter intention can be given effect only if the power to consume the corpus is unfettered by any "care and support" condition. It is our best judgment that this latter intention is overriding in the circumstances of this case, and that it would be given effect by the Florida courts in their application of the generally accepted principle of relying upon the dominant intention of the parties. We do not find persuasive the Government's contention that the decedent's primary interest here was to provide for his children, who would be the remaindermen in the event that Carlene failed to consume the corpus after his death. We think it far more convincing that the decedent was setting aside this comparatively modest amount of some $ 35,000 for the woman who was undertaking to marry him at his advanced stage in life (and who was offering her home to him as a place in which to reside), particularly *668 when he had already made substantially more generous provisions for his children to succeed to the remainder of his total estate of about $ 500,000. In our judgment, the stated purpose -- to take advantage of the marital deduction -- would be found to be controlling by the Florida courts in construing the agreement. Cf. Estate of Milliken v. Commissioner,70 T.C. 883, 890 et seq. (1978), where we noted that, in giving effect to a purpose to obtain the maximum marital deduction, the highest court of Massachusetts adopted an interpretation that overrode an express provision in the governing instrument that would have defeated that purpose. The present case is a stronger one for the estate, and we have no reason to think that the Florida courts would not give effect to the explicitly stated purpose herein. We hold that petitioner is entitled to the claimed marital deduction. Decision will be entered under Rule 155.
Footnotes
1. In accordance with the position it has taken in its revenue rulings, the Government raised no issue as to whether property passing under a prenuptial agreement has "passed from the decedent to his surviving spouse" within the meaning of sec. 2056(a), I.R.C. 1954. See Rev. Rul. 68-271, 1968-1 C.B. 409; Rev. Rul. 54-446, 1954-2 C.B. 303↩.
2. We note that the statute has been amended to permit a deduction for a qualified life estate passing to a surviving spouse. See Pub. L. 97-34, sec. 403(d)(1), 95 Stat. 302. This amendment is effective for estates of decedents dying after December 31, 1981, section 403(e)(1), 95 Stat. 305, and as such is inapplicable in the present case. ↩
3. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b) and (c), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. (b) Limitation in the Case of Life Estate or Other Terminable Interest.-- (5) Life Estate with Power of Appointment in Surviving Spouse.--In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse-- (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purpooses of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.↩